RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 11a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

KEVIN N. BROWN,

        *Petitioner-Appellant,*

    *v.*

DAVID BOBBY, Warden,

        *Respondent-Appellee.*

No. 07-4471

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
No. 06-01205—Ann Aldrich, District Judge.

Argued: December 2, 2010

Decided and Filed: September 2, 2011

Before: KENNEDY, COLE, and ROGERS, Circuit Judges.

_____

### COUNSEL

**ARGUED:** C. Kevin Marshall, JONES DAY, Washington, D.C., for Appellant. William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee. **ON BRIEF:** C. Kevin Marshall, JONES DAY, Washington, D.C., for Appellant. William H. Lamb, OFFICE OF THE OHIO ATTORNEY GENERAL, Cincinnati, Ohio, for Appellee.

    ROGERS, J., delivered the opinion of the court, in which KENNEDY, J., joined. COLE, J. (pp. 19–35), delivered a separate dissenting opinion.

_____

### OPINION

_____

    ROGERS, Circuit Judge. Because the facts of this case present a close question in regard to whether a Sixth Amendment violation occurred, its resolution depends largely upon whether, pursuant to the Anti-Terrorism and Effective Death Penalty Act

of 1996 (AEDPA), this court should defer to the state court's determination that defendant's speedy trial right was not violated.  The district court properly denied Kevin Brown's petition for a writ of habeas corpus in light of the Supreme Court's recent decision in *Harrington v. Richter*, 131 S. Ct. 770 (2011), which supports the application of AEDPA deference to the state court's determination.  The Ohio Court of Appeals rejected Brown's assertion of a federal speedy trial right, so as to implicate AEDPA.  And neither of the alternatives for habeas relief under AEDPA is present here.  First, the Ohio Court of Appeals' application of its specific speedy trial standards in denying Brown's speedy trial claim was not contrary to clearly established federal law.  Second, the state court's determination was a reasonable application of clearly established federal law.  The writ was accordingly properly denied.

I.

Kevin Brown was arrested in his home on allegations of rape on July 6, 2001.  Brown's original trial date was September 26, 2001, but because of numerous continuances and motions by both parties and the court, he was not brought to trial until February 10, 2003.  Brown's counsel initially requested two continuances, which the trial court granted and which pushed the trial date back to November 28, 2001.  Then, the trial court entered two sua sponte continuances—in between these two continuances came another continuance by joint motion of the parties—further delaying proceedings until December 27, 2001.  It is unclear what occurred from December 27, 2001, until February 27, 2002, but on that later date the government moved for a continuance to conduct DNA testing.  The trial court granted this request and set a new June 5, 2002 trial date based on the government's assertion that the latest date DNA testing results would be available was the end of May 2002.  However, when that June date arrived, the government noted that it still had not received the DNA testing and moved for another continuance.  Brown objected to the request and claimed that further delay violated his speedy trial right.  The trial court granted a forty-day continuance despite Brown's objections.  Brown's trial counsel withdrew with leave of court on July 8, 2002, and on that same day Brown was appointed new counsel and an August 5, 2002 trial date was

set.  On August 5, 2002, the parties made a joint request for a continuance, which the court granted, setting an August 19, 2002 trial date.  On August 7, 2002, Brown filed a motion to dismiss on speedy trial grounds, and thus instead of proceeding to trial on August 19, the trial court held a hearing on this motion to dismiss, denied the motion, and set an October 30, 2002 trial date.  Brown appealed this denial on October 15, 2002, which the court of appeals ultimately denied and which caused his trial to be pushed back until November 18, 2002.  Brown requested additional continuances on November 18, 2002, and January 6, 2003, because of the unavailability of his expert witness.  The trial court granted both, moving the trial to January 21, 2003.  Although proceedings began on this date, the court declared a mistrial two days later and reset the trial for February 10, 2003.

When he was finally brought to trial, a jury convicted Brown on four counts of rape, and he was sentenced to four consecutive life sentences.  Brown appealed his convictions to the Ohio Court of Appeals, alleging, among other things, that he was denied his right to a speedy trial.  The court of appeals rejected this claim.  In so ruling, the court of appeals applied Ohio's speedy trial provisions in Ohio Rev. Code § 2945.71 et seq., and concluded that the delay of approximately nineteen months in Brown's case was both Brown and the state's fault, and that the portion of the delay for which the state was to blame did not reach the number of days required for a speedy trial violation.  Brown, acting pro se, then sought leave to appeal to the Ohio Supreme Court, which was denied.

Brown filed a petition for a writ of habeas corpus with the federal district court below on May 15, 2006, again raising a speedy trial claim.  The magistrate judge recommended denying this petition.  In regard to Brown's speedy trial claim, the magistrate judge analyzed the four factors laid out by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972), and determined that the Ohio Court of Appeals' rejection of the claim "was not an 'objectively unreasonable' application of clearly established federal law on the Sixth Amendment right to speedy trial."  Although the magistrate judge believed that three of the four *Barker* factors weighed in favor of Brown, the judge

did not believe that Brown demonstrated any prejudice from the delay in bringing him to trial.  This prompted the magistrate judge to conclude that Brown was not entitled to the "extraordinary remedy" of a writ of habeas corpus.  Despite Brown's objections, the district court adopted the magistrate judge's recommendation and denied Brown's petition on November 9, 2007.  Brown now appeals.

II.

Pursuant to *Harrington*, this court can presume that the state court adjudicated on the merits Brown's federal speedy trial claim, warranting the application of AEDPA deference.  28 U.S.C. § 2254(d) describes this deference as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

But by its own terms, the deference in this provision applies "only to habeas claims that were adjudicated on the merits in state court." *Newton v. Million*, 349 F.3d 873, 878 (6th Cir. 2003).  In *Harrington*, the Supreme Court explained that a state court need not state its reasoning or provide any explanation for its conclusions for it to "adjudicate on the merits" a federal claim.  131 S. Ct. at 784.  Instead, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85.  Thus, the mere fact that the Ohio Court of Appeals did not specifically explain that it was ruling on Brown's Sixth Amendment claim does not prevent this court from deferring to that court's opinion on habeas review.

The Supreme Court held in *Harrington* that the presumption in favor of finding an adjudication of the federal claim on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely," *id.* at 785, but that is not the case here. Brown has not put forth any significant reason for this court to believe that the Ohio Court of Appeals did not consider his Sixth Amendment claim. In fact, the state court of appeals even mentioned the Sixth Amendment standard in its opinion, stating that "[t]he Sixth Amendment to the United States Constitution guarantees that, '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.' This right was made applicable to the States by the Fourteenth Amendment." *State v. Brown*, 03-MA-32, 2005 WL 1385715, at *2 (Ohio App. June 7, 2005) (second alteration in original). The state court of appeals also cited Ohio cases that relied on federal speedy trial law in its decision. *Id.* (citing *State v. Dunlap*, 01-CA-124, 2002 WL 1396754, at *2 (Ohio App. June 18, 2002); *State v. Anderson*, 2002-CO-30, 2003 WL 21134706, at *2 (Ohio App. May 16, 2003)). Further, the mere fact that the state court of appeals applied its own 270-day limit in determining whether a speedy trial violation occurred does not make applicable the exception in *Harrington*, especially considering that Ohio courts regard the state's speedy trial scheme as an implementation of the federal constitutional guarantee to a speedy trial. *See State v. O'Brien*, 516 N.E.2d 218, 220 (Ohio 1987); *State v. Pachay*, 416 N.E.2d 589, 591 (Ohio 1980). These facts bolster the presumption in favor of finding an adjudication of the federal claim on the merits. Thus, we must defer to the state court of appeals' opinion.

## III.

Despite this deference, AEDPA permits habeas relief "[w]hen the state court issues a decision that is contrary to federal law." *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006); *see* 28 U.S.C. § 2254(d)(1). This prong of AEDPA is not applicable in Brown's case as the state court of appeals did not "arrive[] at a conclusion opposite to that reached by [the Supreme Court] on a question of law," nor did it "decide[] [this] case differently than [the Supreme Court] has on a set of materially indistinguishable

facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (describing the "contrary to" standard). Although the Ohio Court of Appeals applied a 270-day rule to determine whether the delay in bringing Brown to trial violated his right to a speedy trial, this process does not violate clearly established federal law. The Supreme Court laid out a balancing test in *Barker* for determining whether a defendant's speedy trial right has been violated, and the Ohio Court of Appeals did not explicitly address the factors outlined in *Barker*. But AEDPA does not require that a state court strictly apply a federal test, as long as the court does not apply any test or standard that is contrary to federal law. In fact, the Supreme Court has explained that the use of the word "contrary," which "is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed,'" in the text of 28 U.S.C. § 2254(d) "suggests that the state court's decision must be substantially different from the relevant [Supreme Court] precedent." *Williams*, 529 U.S. at 405. That is simply not the case here.

Ohio's procedure for determining whether a speedy trial violation has occurred, by applying the 270-day limit, is not "substantially different" from the *Barker* analysis, and can be seen as merely the state's method of applying that Supreme Court precedent in a more structured manner. The Supreme Court in *Barker* refused to establish a set number of days constituting a violation of the speedy trial right, stating that "such a result would require [the] Court to engage in legislative or rulemaking activity, rather than in the adjudicative process to which [it] should confine [its] efforts." 407 U.S. at 523. However, the Court recognized that "[t]he States . . . are free to prescribe a reasonable period consistent with constitutional standards," and this is exactly what Ohio has done. *Id.* Moreover, Ohio courts consider the speedy trial provisions outlined in Ohio Rev. Code § 2945.71 et seq. to be "coextensive" with the Sixth Amendment's requirement, even stating that "the speedy trial statutes implement the constitutional guarantee of a public speedy trial." *O'Brien*, 516 N.E.2d at 220; *Pachay*, 416 N.E.2d at 591. Though this fact alone is not sufficient to establish that the application of Ohio's 270-day limit is not contrary to federal law, it is instructive on this point.

Further examination of how Ohio's speedy trial statutes are applied demonstrates that they are not contrary to federal speedy trial law. Ohio Rev. Code § 2945.72 tolls the amount of time within which an accused must be brought to trial—essentially attributing the delay to the accused—in the following situations:

> (A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;
> (B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial;
> (C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;
> (D) Any period of delay occasioned by the neglect or improper act of the accused;
> (E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;
> (F) Any period of delay necessitated by a removal or change of venue pursuant to law;
> (G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;
> (H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;
> (I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending.

In every other scenario, the amount of time the defendant is held counts toward his or her speedy trial clock. This provision thus takes into account many of the considerations behind the second and fourth *Barker* factors, i.e., the reason for the delay and the prejudice to the defendant. *See* 407 U.S. at 530. The remaining factors, the length of the delay and the defendant's assertion of his right, are likewise accounted for in Ohio's time limits for bringing an accused to trial, Ohio Rev. Code § 2945.71, and through its

requirement that a defendant bring a motion to discharge on speedy trial grounds at trial, Ohio Rev. Code § 2945.73(B); *see also State v. Trummer*, 683 N.E.2d 392, 402 (Ohio App. 1996) (discussing the waiver of a speedy trial claim without a motion to discharge). In addition, the Ohio courts have recognized that "there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is [their] duty to see that an accused receives the protection of the higher authority." *O'Brien*, 516 N.E.2d at 221 (internal quotation marks omitted) (quoting *State v. Ladd*, 383 N.E.2d 579, 582 (Ohio 1978)). Thus, any time an Ohio court reviews the implementation of a speedy trial statute, it is guided not just by those provisions, but also by the dictates of the Sixth Amendment whether or not it expressly applies the factors laid out in *Barker*.

The mere fact that the Ohio Court of Appeals did not explicitly follow each of the rules laid out by the Supreme Court in applying the *Barker* factors does not mean that its determination is substantially different from the relevant Supreme Court precedent. This is especially true considering that *Barker* does not set forth a strict formula for determining if a speedy trial violation has occurred, but instead calls for the weighing of a number of factors. Brown argues that the Supreme Court has rejected quantifying into a number of days or months a specific amount of time necessary to establish a speedy trial violation. However, as previously noted, the Court has recognized that while it is inappropriate for that court to establish such time limits, there is no problem with the state legislatures doing so as long as they are reasonable.

At oral argument, Brown also pointed to the fact that Ohio's speedy trial provision treats sua sponte continuances differently than the Supreme Court did in *Barker*, but this minor difference does not make Ohio's approach, which was followed by the state court of appeals here, contrary to federal law. Ohio tolls Brown's 270-day limit for any reasonable continuance, Ohio Rev. Code § 2945.72(H), while the Court in *Barker* stated that "[a] more neutral reason [for delay] such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstance must rest with the

government rather than with the defendant," 407 U.S. at 531.  This consideration does not have a large impact on the weighing of the *Barker* factors, as the Court itself recognizes that such reasons for delay should be given less weight even though they should be weighed against the state.  Further, although these standards might differ in some respects, they are not substantially different, as one can envision scenarios in which a continuance will be treated the same under both.  Ohio's manner of looking at the reason for the delay is thus not contrary, or diametrically opposed, to federal precedent.  Brown has not set forth any arguments sufficient to demonstrate that the court of appeals' determination was substantially different from relevant Supreme Court precedent.  Thus, Brown is not entitled to a writ of habeas corpus pursuant to the "contrary to" prong of AEDPA.

## IV.

Having determined that AEDPA deference should apply and that the court of appeals' decision was not contrary to federal law, we must now analyze the *Barker* factors in order to determine whether the Ohio Court of Appeals unreasonably applied federal law in finding no speedy trial violation in Brown's case.  A deferential review of the state court's analysis shows that the state court did not unreasonably apply federal law.  The four factors to be considered are the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant.  *Barker*, 407 U.S. at 530.  None of these factors is "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," but instead "they are related factors and must be considered together with such other circumstances as may be relevant."  *Id.* at 533.  It appears undisputed that the first and third of these factors weigh in Brown's favor, as the length of delay in bringing Brown to trial meets the threshold required before consideration of the other factors and Brown asserted his right to a speedy trial several times.  The length of the delay is a "triggering mechanism," *id.* at 530, and it takes into account the entire duration of pretrial detention, regardless of who is to blame for the delay in getting to trial, *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005).  We have recognized that a delay of one year can be presumed to satisfy this factor, and

here the delay of 584 days or approximately nineteen months was well over a year.  *See United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006).  Moreover, the defendant asserted his right to a speedy trial on at least three separate occasions: (1) on November 21, 2001, when he filed a pro se motion to dismiss the indictment on speedy trial grounds; (2) on June 5, 2002, when Brown argued to the trial court at a hearing that his right to a speedy trial was violated; and (3) on August 7, 2002, when Brown filed a motion to dismiss on speedy trial grounds.  For the most part, however, the remaining two factors, the reasons for the delay and the prejudice to the defendant, weigh differently.

Because AEDPA deference applies, we need not go into too great of depth in considering these two factors, but instead should simply ascertain whether the state court's decision constituted an unreasonable application of clearly established federal law.  *See* 28 U.S.C. § 2254(d)(1).  A decision can "unreasonably apply" federal law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams*, 529 U.S. at 407.  This court is not concerned with whether the state court ruled erroneously or incorrectly, but rather with whether the state court decision was "objectively unreasonable."  *See Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004); *Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004).

In regard to the reasons for the delay, the state court reasonably applied federal law.  The Supreme Court has explained that different reasons for delay should be given different weights with deliberate delays weighed more heavily and valid delays less heavily.  *Barker*, 407 U.S. at 531.  The underlying purpose of analyzing the reasons for the delay is determining which party is more to blame for the delay.  *Maples*, 427 F.3d at 1026 (quoting *Doggett v. United States*, 505 U.S. 647, 651 (1992)).  Much of the debate surrounding the reason for the delay in this case revolves around the time taken

to complete DNA testing.[1]  The trial court granted the state a continuance on February 27, 2002, in order to complete DNA testing.  The state told the court that it had requested a rush on DNA testing and that the latest date results would be complete was May 29, 2002.  However, the state did not send Brown's samples to the Ohio Bureau of Criminal Identification and Investigation (BCI) for DNA testing until April 9, 2002.  Because of a backlog in the state lab, the state decided to send the samples to a private lab and requested a continuance on June 5, 2002, in order to do this.  Unfortunately, the state yet again failed to promptly send the sample to this private lab; although the state told the court that it would be sent on June 6, 2002, the sample was not sent to the private lab until August 21, 2002.  That lab completed the testing and returned the results to the state on September 3, 2002.  In the meantime, Brown's counsel withdrew with leave of court on July 8, 2002.  On that same day, the court appointed Brown new counsel, who immediately moved for discovery and for a bill of particulars, and set an August 5, 2002 trial date.  On August 5, 2002, the parties made a joint motion for a continuance, which the court granted, setting an August 19, 2002 trial date.  Trial was further delayed until November 18, 2002, because of proceedings relating to Brown's motion to dismiss on speedy trial grounds, which both the trial court and the state court of appeals ultimately denied.

Brown argues that the state's delay in sending the DNA sample to the labs warrants attributing the entire delay from February 27, 2002, to November 18, 2002, to the state,[2] but the state court of appeals' differing analysis of this delay was reasonable. The state court of appeals concluded that "the over one-month delay in sending the samples to BCI was unreasonable," and that "those 41 days should be counted against

---

[1]Other than this delay, Brown also focuses on the delay caused by the state court's sua sponte continuances and by the grant of a mistrial because of the state's failure to provide a bill of particulars prior to the first trial.  Brown argues that these delays should weigh against the state.  The court of appeals did include the additional delay because of the mistrial in its assessment of the state's blame. *Brown*, 2005 WL 1385715, at *8.  Although the court of appeals tolled the speedy trial clock for approximately three weeks because of the state court's sua sponte continuances, this was not unreasonable and it does not affect the overall analysis of the reason for the delay to the same extent as the consideration of the much longer delay for DNA testing. *Id.* at *6.  For these reasons, these delays need not be addressed further.

[2]Brown claims that although the state received the test results from the private lab on September 3, 2002, it did not share those results with the defense until November 18, 2002.  However, Brown fails to point to anything in the record supporting this contention.

appellant's speedy trial time." *Brown*, 2005 WL 1385715, at *6. However, the court noted that "[a] continuance for testing that may exculpate a defendant, such as DNA testing, is reasonable, even when not on the defendant's own motion," *id.* (citing *State v. High*, 757 N.E.2d 1176, 1184 (Ohio App. 2001)) and thus held that "[a] reasonable amount of time should be tolled in order for [the state] to complete the DNA testing," *id.* at *7. The state court of appeals attributed the delay after April 9, 2002, to Brown as the reasonable amount of time needed to complete DNA testing, finding that this delay was necessary because of the backlog at the state lab and the need to send the results to a different lab. Attributing this time to Brown shifts a large portion of the responsibility for the delay away from the state and onto Brown. The state court of appeals thoughtfully and reasonably considered this delay, and it was arguably in a better position than this court to make that assessment because of its presumably greater familiarity with the state's DNA-testing procedures. Considering that this DNA evidence could have vindicated Brown, he certainly had an interest in its being completed and thus it is acceptable to attribute any reasonable delay in acquiring it to Brown. The state should of course bear part of the blame for this delay because of its dilatory actions in failing to get the samples promptly to the labs, and the state court accounted for this. But the state court also accounted for the fact that much of the delay was beyond the state's control, as it was simply due to a backlog at the lab. This was a reasonable conclusion.

The state arguably deserves additional blame for failing to promptly send the sample to the private lab, but the court of appeals found that the delay from July 8, 2002, to November 18, 2002, should be attributed to Brown not only as the reasonable time taken to complete DNA testing, but also because of the withdrawal of Brown's counsel and Brown's pursuit of a dismissal. Even if the state had not delayed getting the DNA testing, Brown would not have been brought to trial within this time period because of the continuances he sought in acquiring new counsel, seeking discovery and a bill of

particulars, and moving to dismiss the case on speedy trial grounds.[3] Thus, the state had an additional basis for attributing this portion of the delay to Brown. Were one to accept Brown's contentions and consider the state more to blame for the entire delay for DNA testing, the reason-for-delay factor would still not weigh heavily in Brown's favor. As the state court of appeals correctly noted, Brown sought continuances and filed motions on numerous occasions throughout his pre-trial detention, which also further delayed his trial. Thus, even if the second *Barker* factor, the reason for the delay, marginally weighs in Brown's favor, it does not have a great impact on the balance in the speedy trial analysis or make unreasonable the state court's conclusion of no constitutional violation.

The most important factor in our analysis of the delay in Brown's case is the prejudice to Brown. The Supreme Court has identified three interests of defendants that the speedy trial right is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Id.* Brown claims both prejudice from oppressive pretrial incarceration and from impairment to his defense; he seeks to prove the latter form of prejudice through a presumption. However, the state court of appeals' factual findings are not clearly erroneous, and these findings suggest that Brown did not suffer any prejudice from his extended pretrial detention. Further, Brown has not demonstrated that this detention impaired his defense at trial nor that he is entitled to a presumption of trial prejudice.

The state court's finding that Brown was also held pursuant to a parole holder, meaning that he did not suffer prejudice from oppressive pretrial incarceration, was a reasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d)(2). The Supreme Court has discussed this form

---

[3]Brown considers the state's reason for delay during this time period—namely, its inaction in obtaining DNA results—to make it more culpable than Brown and thus argues that this time should be attributed to the state. However, Brown does not point to any authority that compels such a conclusion, making the state court's assessment equally reasonable.

of prejudice, noting that "[t]he time spent in jail awaiting trial has a detrimental impact on the individual.  It often means loss of a job; it disrupts family life; and it enforces idleness. . . . The time spent in jail is simply dead time."  *Barker*, 407 U.S. at 532-33. But if Brown would have been incarcerated despite the charges at issue, then he cannot be said to have been prejudiced by his incarceration on those charges.  In *United States v. Brown*, 498 F.3d 523, 532 (6th Cir. 2007), we concluded that no prejudice arose from defendant's incarceration "because even if he had not been detained in this case, he would have been in state custody for [charges pending in two other states]."

The state court of appeals considered whether Brown was held solely on the rape charges or if he was also held pursuant to a parole holder in determining whether to apply the triple-count provision under Ohio's speedy trial law.[4]  That provision requires that a defendant held solely on the pending charge be brought to trial within ninety days, but that he otherwise be brought to trial within 270 days.  *See* Ohio Rev. Code § 2945.71.  The court of appeals held that Brown was not being held solely on the rape charges:

> [Brown's] counsel acknowledged that [Brown] was being held on a parole holder in addition to the pending charges.  Evidence of a valid parole holder can be adduced from the transcripts of the trial court hearing. [Brown] apparently told his attorney that he was in contact with his parole officer and that the parole officer told him that if he was not convicted of the rape charges, he would drop the parole violation. Furthermore, counsel acknowledged at one point that the State had a duty to try [Brown] within 270 days.  This too was an acknowledgment of the parole holder because [Brown's] speedy trial time would only be 270 days if he was being held on the rape charges and the parole holder.
>
> Moreover, . . . [Brown] did not request findings of fact from the trial court.  The court issued a judgment denying [Brown's] motion to dismiss.  The court applied the 270-day limit without addressing why the triple-count provision did not apply.

---

[4]The state alleged before the court of appeals that Brown was held as a result of post-release control violations because "(1) he was residing in a location other than where he was supposed to be residing, and (2) [he] was associating with a known or convicted felon."

Thus, because the record supports the trial court's decision, [Brown] was not entitled to [the] triple-count provision as he was not being held solely on the pending charge.

*Brown*, 2005 WL 1385715, at \*5 (citations and footnote omitted). This finding is reasonable considering the evidence presented.

Brown did not put forth sufficient evidence to show that he could not have been held pursuant to a parole holder, and thus the state court was reasonable in finding that he was not held solely on the pending charge. The mere fact that Brown now submits a notarized letter from his parole officer does not make this finding unreasonable, especially considering that this letter does not state that the parole holder would not have become active if Brown had not been held according to the rape charges. Instead, this letter states only that "[s]ince [Brown] never posted bond, the APA Hold order was never active." The warden explained at oral argument that a parole holder only activates if there is a reason for it, such as the posting of bail, and Brown has not shown that if he had sought release, the parole holder would not have activated in his case. Considering the state court's reasonable factual finding, we cannot find to the contrary that Brown suffered any actual prejudice from oppressive pretrial incarceration because he likely would have been detained regardless.

Although the state court did not explicitly consider this form of prejudice, Brown has also failed to demonstrate that the length of his pretrial incarceration impaired his ability to present a defense at trial. "[The] impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532). Accordingly, the Supreme Court has recognized that "consideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.* Instead, prejudice can be presumed in certain cases of "excessive delay." *Id.* Whether prejudice can be presumed depends both on the length of the delay and the reason for the delay. The reason for the delay can fall within one of three categories: (1) "diligent prosecution" where delay is "inevitable and wholly justifiable," and "the

Government ha[s] pursued [the defendant] with reasonable diligence from his indictment to his arrest;" (2) "bad-faith delay," where "the Government ha[s] intentionally held back in its prosecution of [the defendant] to gain some impermissible advantage at trial;" and (3) "official negligence in bringing the accused to trial," which is a middle ground between diligent prosecution and bad-faith delay. *Id.* at 656-57.

At most, the delay in bringing Brown to trial constitutes official negligence. Brown has not put forth any facts tending to show that the state's actions in seeking continuances, failing to submit DNA samples on time, and failing to submit a bill of particulars were a calculated attempt to gain an advantage at trial. Brown fails to even suggest what advantage might have been gained by these delays, and admits in his appellate brief that "[p]recisely what sort of 'impermissible advantage at trial' [the state's actions were] designed to obtain remains unknown."

"Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Id.* at 657. The Supreme Court has explained that "the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows, [and] [t]hus, our toleration of such negligence varies inversely with its protractedness . . . and its consequent threat to the fairness of the accused's trial." *Id.* (citation omitted). Here, the total delay was 584 days or approximately nineteen months, but the total portion of that delay attributable to the state was at most approximately one year.[5] *See United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (noting that only those periods of delay attributable to the state are relevant to the constitutional claim). This court has recognized that "[i]n the absence of particularized trial prejudice, delay attributable to the state's negligence 'has typically been shockingly long' to warrant a

---

[5] Brown attributes the over six months taken to acquire DNA testing—plus an additional two months that it apparently took to get those results to Brown's counsel even though there is nothing in the record to support this contention—entirely to the state. The state court disagreed with that assessment and attributed only to the first six weeks of that time to the state. For the reasons discussed above, this is a reasonable analysis. However, assuming for the sake of argument that Brown's contention is persuasive, the total amount of time attributed to the state would be a little over one year.

finding of prejudice." *United States v. Robinson*, 455 F.3d 602, 608 (6th Cir. 2006) (quoting *United States v. Schreane*, 331 F.3d 548, 559 (6th Cir. 2003)); *compare Schreane*, 331 F.3d at 559 (no presumption with thirteen-and-one-half-month delay), *Darnell v. Berry*, 182 F.3d 916, 1999 WL 503512, at *2 (6th Cir. July 8, 1999) (no presumption with eighteen-month delay), *with Doggett*, 505 U.S. at 658 (presumption with six-year delay), *United States v. Graham*, 128 F.3d 372, 376 (6th Cir. 1997) (presumption with eight-year delay), *United States v. Brown*, 169 F.3d 344, 351 (6th Cir. 1999) (presumption with five-and-one-half-year delay). The delay here simply does not fall in line with delays for official negligence warranting a presumption of prejudice. Thus, this prejudice factor weighs in the state's favor.

Given the balance of these factors, the state court was reasonable in its determination that the delay in bringing Brown to trial did not violate the Constitution. Although the length of the delay surpasses the threshold required to present a speedy trial claim and Brown clearly asserted his speedy trial right, it is not clear that the state is more to blame for the delay or that Brown was prejudiced by the delay. Even if one assumes that the state is more to blame, Brown was not blameless and in fact was responsible for a significant portion of the delay. Regardless, Brown has not shown that he suffered any prejudice, in the form of either oppressive incarceration or impairment to his defense, from this over nineteen-month delay, and this alone is sufficient to tip the balance in favor of the state court's finding no violation. We explained in *United States v. Bohn*, 281 F. App'x 430, 437 (6th Cir. 2008), that "a finding in the defendant's favor on each of the four *Barker* factors does not necessarily warrant dismissal of the indictment," because "[a] violation of the right to a speedy trial arises [only] when 'the circumstances of the case are such that further delay would endanger the values the right protects.'" *Id.* (quoting *Barker*, 407 U.S. at 522); *see also United States v. Love*, 178 F.3d 1297, 1999 WL 115523, at *6-8 (6th Cir. Feb. 8, 1999) (finding no violation when the first three of the four *Barker* factors weighed in favor of the defendant, but the defendant had not shown any prejudice from the delay). The state court, in short, reasonably applied *Barker* in Brown's case.

V.

For these reasons, we affirm the judgment of the district court.

————————————

## DISSENT

————————————

COLE, Circuit Judge, dissenting.  Because the state court's adjudication of Brown's federal speedy trial claim was contrary to clearly established federal law and de novo review of his claim demonstrates that his Sixth Amendment rights were violated, I respectfully dissent.

### I.  Standard of Review

Brown presented to the Ohio Court of Appeals a speedy trial claim, based upon violations of both the Ohio speedy trial statute and the Sixth Amendment to the United States Constitution.  The state court acknowledged that the right to a speedy trial is grounded in the Sixth Amendment, but the entirety of its analysis centered upon counting days and continuances under the strict time limit set forth in Ohio Rev. Code § 2945.71.  The court denied Brown's claim, stating "appellant was brought to trial within the 270 day speedy-trial limit.  Accordingly, appellant's first assignment of error is without merit."  *State v. Brown*, 03-MA-32, 2005 WL 1385715, at *8 (Ohio App. June 7, 2005).

This exclusive focus on Ohio's statutory limit may have previously led to the conclusion that the court did not adjudicate Brown's *federal* speedy-trial claim.  *See Lyell v. Renico*, 470 F.3d 1177, 1182 (6th Cir. 2006) (holding that there was no adjudication on the merits and applying de novo review where petitioner presented claims based upon both federal and state law and the state court addressed them "only in state-law terms"); *Danner v. Motley*, 448 F.3d 372, 376 (6th Cir. 2006) (holding that when presented with petitioner's claim based upon state and federal law and the state court "confined its analysis . . . [to] state law" AEDPA deference does not apply).  But whether the state court adjudicated Brown's federal claim must be assessed in light of *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770 (2011), which was decided after oral argument in this case.  *Harrington* declared that "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that

the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785.

The circumstances here appear to bring this case within the exception announced in *Harrington*. The fact that the Ohio Court of Appeals adjudicated Brown's speedy trial claim *solely* within the framework of state statutory law is a strong "indication" it did not adjudicate his federal speedy trial claim. Indeed, the "more likely" explanation for the state's decision is that it misinterpreted Brown's appeal as raising only a state claim or mistakenly believed the statutory analysis in and of itself adjudicated his federal claim. *Cf. Childers v. Floyd*, 642 F.3d 953, 985 (11th Cir. 2011) (en banc) (Wilson, J., concurring) (applying *Harrington* and explaining that "when a state court either fails to evaluate the proper claim or evaluates the proper claim using a non-federal standard that is neither co-terminus with federal law nor more protective, common sense mandates that we cannot consider such a decision to be an adjudication on the merits of a federal constitutional claim"). But as the Supreme Court of Ohio correctly recognized, "there may be situations wherein the statutes do not adequately afford the protection guaranteed by the federal and state constitutions, in which case it is our duty to see that an accused receives the protection of the higher authority." *State v. O'Brien*, 516 N.E.2d 218, 220 (Ohio 1987) (quoting *State v. Ladd*, 383 N.E.2d 579, 582 (Ohio 1978)). Nowhere does the state court decision indicate that the court recognized this duty and ensured Brown's constitutional right to a speedy trial was protected by adjudicating his federal claim. Nevertheless, attempting to discern what the state court intended by its decision strikes me as an exercise in futility. Even assuming the state court adjudicated Brown's federal claim, that decision was contrary to clearly established federal law.

A decision is "contrary to" clearly established federal law if it: (1) "'applies a rule that contradicts the governing case law set forth in [Supreme Court] cases,'" or (2) "'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"

*Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003). The Court has plainly stated that, "[a] state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Williams*, 529 U.S. at 405. AEDPA "does not require citation of [Supreme Court] cases—indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8. The divergence between the reasoning and rules applied by the Ohio Court of Appeals and the approach laid out by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 530 (1972), shows that the state's decision was "contrary to" clearly established federal law.

In 1972, the Supreme Court established that, in order to determine whether a defendant's right to a speedy trial has been violated, courts must engage in a "difficult and sensitive balancing process," through which "the conduct of both the prosecution and the defendant are weighed." *Barker*, 407 U.S. at 533. The Court explicitly rejected the notion that this right can be "quantified into a specified number of days or months." *Id.* at 523; *see also United States v. Watford*, 468 F.3d 891, 901 (6th Cir. 2006) ("The Supreme Court has rejected rigid rules for determining when a Sixth Amendment speedy trial violation has occurred in favor of an ad hoc balancing approach.").[1] The statutory regime applied by the state court in this case is just that—a bright-line time limit. Nothing could be more "opposite in character or nature," *Williams*, 529 U.S. at 405, from the clearly established law set forth in *Barker*.

*Barker* identified four factors to determine whether a defendant's right to a speedy trial has been violated. Although none are "either a necessary or sufficient condition to the finding of a deprivation of the right . . . . they are related factors *and must be considered* together with such other circumstances as may be relevant." *Barker*,

---

[1]To be sure, the Court acknowledged that the states are permitted to "prescribe a reasonable time period." *Barker*, 407 U.S. at 523. Nevertheless, the fact that the states are free to impose more protective requirements does not relieve the state of its duty to ensure constitutional requirements are met. *See Nelson v. Hargett*, 989 F.2d 847, 851 n.2 (5th Cir. 1993) ("It is well established that a state's compliance with its own speedy trial statute will not insulate it from constitutional attack.").

407 U.S. at 533 (emphasis added). The state court did not need to cite *Barker* or even be aware of *Barker*. *See Early*, 537 U.S. at 8. But nowhere in its decision did the Ohio Court of Appeals consider the prejudice Brown suffered—the very interest "which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532. The state court's decision was wholly devoid of the delicate balancing mandated by *Barker* and replaced by a bright line limit, subject to myriad tolling provisions that serve only to elongate the time in which the defendant must be brought to trial.

But it was not just the state's overall evaluation of Brown's claim that was contrary to federal law, so too was its treatment of several continuances permitted by the trial court. The two continuances entered sua sponte by the trial court because of another trial tolled Brown's speedy-trial time period under Ohio's statute. *See* Ohio Rev. Code § 2945.72(H). In *Barker*, however, the Supreme Court explained that delays attributable to "neutral reason[s] such as . . . overcrowded courts" are to be weighed against the state "since the ultimate responsibility for [these] circumstances must rest with the government rather than with the defendant." 407 U.S. at 531.[2] Additionally, while the Ohio statute allows only "reasonable" continuances to toll the speedy-trial clock, *see* Ohio Rev. Code § 2945.72(H), it limited that inquiry here to the length of time taken by the government, ignoring Brown's claim that the government had repeatedly misrepresented to the trial court the status of the testing. By contrast, the Supreme Court has clearly explained that "'different weights [are to be] assigned to different reasons' for delay." *Doggett v. United States*, 505 U.S. 647, 657 (1992) (alternations in original) (quoting *Barker*, 407 U.S. at 531); *see also Watford*, 468 F.3d at 901 (characterizing the Supreme Court's delineations of justifications as a hierarchy). Emphasizing the importance of this inquiry, the Court in *Doggett* explained that "a *bad-faith* delay the

---

[2]The majority claims this is a minor difference that minimally impacts the weighing of the *Barker* factors. But as the "flag all litigants seek to capture," *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986), the reason for the delay factor is critical to any speedy trial analysis. This is evidenced by the Supreme Court's decision in *Vermont v. Brillon*, 556 U.S. ---, 129 S. Ct. 1283 (2009). Reviewing the Vermont Supreme Court's application of the *Barker* factors, the Court held that the state court's analysis, which attributed periods of delay to the wrong party, constituted "a fundamental error . . . call[ing] for [the] Court's correction. *Id.* at 1291.

length of this *negligent* one would present an overwhelming case for dismissal." *Doggett*, 505 U.S. at 657 (emphasis added).

The rules the state court applied to adjudicate Brown's speedy-trial claim were "substantially different from the relevant [Supreme Court] precedent." *Williams*, 529 U.S. at 405. Accordingly, the state court's adjudication "resulted in a decision that was contrary to . . . clearly established federal law," and our review of Brown's speedy trial claim is de novo. *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006).

## II. Speedy Trial Right

The Sixth Amendment to the U.S. Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U.S. Const. amend. VI. This right applies to the states via the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U.S. 213 (1967). The right to a speedy trial "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *United States v. MacDonald*, 456 U.S. 1, 8 (1982); *see also United States v. Loud Hawk*, 474 U.S. 302, 312 (1986) ("[T]he Speedy Trial Clause's core concern is impairment of liberty . . . .").

To determine whether the government has violated a defendant's right to a speedy trial, *Barker* established a four-factor balancing test where courts must look to: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. 407 U.S. at 530. Because I believe our review of Brown's speedy-trial claim is de novo, I analyze each factor here.

### A. Length of the Delay

The first factor to consider is the length of the delay. Unless there is "some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors. . . ." *Id.* at 530. Typically, delays "approaching one year [are] presumptively prejudicial." *United States v. Schreane*, 331 F.3d 548, 553 (6th Cir. 2003) (citing

*Doggett*, 505 U.S. at 652).  As the government concedes, the delay here of more than nineteen months passes the threshold determination and triggers our review of the remaining factors.

### B.  Reasons for the Delay

When considering the reasons for the delay, "different weights should be assigned to different reasons":

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government.  A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.  Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531.  At this step we also "consider whether some of the delay is attributable to the defendant." *United States v. Brown*, 498 F.3d 523, 531 (6th Cir. 2007) (explaining that the proper analysis is to consider the delay attributable to the defendant under factor two, not factor one).  "The purpose of th[is] inquiry is to determine 'whether the government or the criminal defendant is more to blame for [the] delay.'" *United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006) (alteration in original) (quoting *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005)).  This factor is "[t]he flag all litigants seek to capture," *Loud Hawk*, 474 U.S. at 315, and the government bears the burden of explaining the delays, *see Barker*, 407 U.S. at 531; *see also United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997).

Brown argues that the vast majority of the delays are attributable to the government's failure to complete routine DNA testing for over sixteen months and repeated disregard of court orders.  He contends that any delays attributable to him do not weigh against him with any force because they either overlap with the government's delays, were the result of the government's delays, or were requested by Brown's counsel without his consent.  The Warden neither makes any attempt to explain those delays, nor contests that the government is more to blame for the delay.  Rather, he

argues that this factor should not weigh *heavily* against the government because: (1) the delays were caused by negligence or overcrowded courts; (2) Brown himself caused many delays; (3) there is no reason the government would want to delay Brown's trial; and (4) this was a one-week trial so we should assume substantial preparation was required. The Warden's attempts to minimize the government's repeated delays and failure to remedy promptly such delays are unpersuasive. I examine each period of delay in turn.

### 1. *July 6, 2001-November 28, 2001*

Brown was arrested on July 6, 2001 and his trial was first scheduled for September 26, 2001. The record does not indicate why this date was chosen, and neither party explains this delay. However, on September 13, 2001, Brown's counsel requested the first of two continuances; the trial court granted each and Brown's trial was rescheduled for November 28, 2001. As the government bears the burden for explaining any delays and has not done so, the initial two-month delay is attributed to the government. *See Redd v. Sowders*, 809 F.2d 1266, 1269 (6th Cir. 1987) ("Unexplained delay is weighed against the prosecution."). But the roughly two-month delay resulting from the continuances requested by Brown's counsel is attributed to Brown. *See Vermont*, 129 S. Ct. at 1290 ("Because 'the attorney is the [defendant's] agent' . . . delay caused by the defendant's counsel is charged against the defendant." (alterations in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 753 (1991))).

### 2. *November 28, 2001-February 27, 2002*

Next, the trial court twice sua sponte moved Brown's trial because of other pending trials, first from November 28, 2001 to December 5, 2001, and again from December 12, 2001 to December 27, 2001, which it set as the date for a pre-trial conference. While this one-month delay due to other trials is a "more neutral reason," the government bears the ultimate responsibility for this delay. *See Barker*, 407 U.S. at 531. The record is silent during the time from December 27, 2001 until February 27, 2002, when the government moved for a continuance. This entire three-month delay weighs against the government.

### 3.  *February 27, 2002-November 18, 2002*

On February 27, 2002, the government sought a continuance to complete its DNA testing.  The trial court granted the continuance and stated that "the [t]rial should be scheduled as soon as reasonably possible after May 29, 2002," because that was the *latest* date the government indicated the DNA results would be complete.  In its motion for a continuance, the government "represented to the court that it had requested a 'rush' on the DNA testing."  However, the government did not send Brown's samples to the Ohio Bureau of Criminal Identification and Investigation ("BCI") to conduct DNA tests until April 9, 2002, more than five weeks after requesting the continuance.  On June 5, 2002, *the day trial was set to begin*, the government moved for another continuance. The government explained that since BCI was experiencing testing difficulties and had put a hold on genetic hair testing, the government wanted to send the sample to a private lab.  The government stated:

> [C]ertainly we are requesting a rush from [the private lab] on the forensics in this matter due to the importance of this case and due to the fact that any forensic test results is [sic], as the Supreme Court of Ohio and the United States of America pointed out, could be exculpatory to the defendant as well. . . . And we plan to have that sent Federal Express tomorrow to the lab . . . .

(R. 13-12, at 19-20.)  The trial court, over Brown's objections, granted the government a forty-day continuance.  However, the government again failed timely to send Brown's DNA sample for testing.  It did not send the sample to the private lab until August 21, 2002, nearly three months after persuading the trial court for a continuance based on its representations that it was seeking a rush on the DNA results.  The private lab completed the DNA testing and returned the results to the government on September 3, 2002.

As the Ohio Court of Appeals noted, "it took [the government] approximately six months from the time it requested the continuance to send the DNA samples to the lab where they were ultimately tested."  *State v. Brown*, 03-MA-32, 2005 WL 1385715, at *6 (Ohio App. June 7, 2005).  The Warden does not explain why the government waited to send the DNA samples to either BCI or the private lab.  Such unexplained conduct by

the government is not a justified delay. More troubling than the lack of explanation, however, is the government's apparent misrepresentation to the trial court that the DNA testing was ongoing and that the results would be available soon. The government did not send the DNA samples to the private lab for testing until August 21, 2002, but at a hearing on August 2, 2002, the government stated that the DNA had been sent to the private lab and that it was awaiting peer review. At a second hearing, on August 19, 2002, the government again stated to the trial court that the private lab had the results, and that the lab had "indicated that peer review would be complete by next week."

During the continuance granted for the DNA testing, Brown's counsel withdrew with leave of the court on July 8, 2002, and the trial court reset Brown's trial date for August 5, 2002. On August 5, 2002, the parties filed a joint motion for a continuance, which the trial court granted and reset trial for August 19, 2002. Meanwhile, Brown had filed a motion to dismiss the indictment on speedy-trial grounds. Thus, instead of proceeding to trial on August 19, the trial court held a hearing on Brown's motion to dismiss. The trial court overruled Brown's motion and reset the trial for October 30, 2002. Brown filed a notice of appeal on October 15, 2002 from the trial court's denial of his motion to dismiss. On November 7, 2002, the Ohio Court of Appeals dismissed Brown's appeal and the trial court set a new trial date of November 18, 2002.

Arguably, the withdrawal of Brown's counsel and his motion to dismiss, which resulted in more than a four-month delay (July 8, 2002-November 18, 2002), should be attributed to Brown. However, the government too was unprepared for trial, because it was negligently seeking the DNA testing. The results of the DNA test were not available until September 3, 2003. In comparing the reasons for the delays during this time—the government's inaction versus Brown's assertion of his constitutional right to a speedy trial—the delay until the DNA results were completed should be weighed against the government. Thus, only a little more than two months (September 3, 2002-November 18, 2002) are attributed to Brown. The previous six months (February 27, 2002-September 3, 2002) are attributed to the government.

4. *November 18, 2002-January 21, 2003*

On November 18, 2002, and again on January 6, 2003, Brown requested and was granted a continuance because his expert witness was unavailable. Brown contends, and the Warden does not deny, that finally, on November 18, 2002, the government turned over the DNA results to Brown. Brown claims that these continuances were the direct result of the government's failure promptly to turn over the results of the DNA test. When the government first sought a continuance for DNA testing, the trial court ordered the government to notify the court and defense counsel within seventy-two hours of its receipt of the test results. The results were completed on September 3, 2002, but the government inexplicably failed to provide the results to Brown until November 18, 2002, the day of trial, and over two months after receiving them. While it is unclear precisely why Brown's expert was unavailable at various points in the timeline, it is clear that Brown's expert could not testify about results he had not had time to evaluate. The government's tardiness thus left Brown with no choice but to seek a continuance. Because the trial would have been delayed irrespective of the expert's availability and through no fault of Brown, this two-month delay weighs against the government.

5. *January 21, 2003-February 10, 2003*

Brown's first trial finally began on January 21, 2003. On January 23, 2003, the trial court declared a mistrial because the government sought to amend a date in the indictment. The Ohio Court of Appeals explained:

> [The government] waited until trial to amend the indictment even though [Brown] had previously filed a notice of alibi concerning the date in the original indictment. Once [the government] amended the indictment, [Brown] could no longer present his alibi as planned. Thus, the court had to declare a mistrial.

(R. 13-40, ¶ 58.) Brown's new trial began February 10, 2003.

This delay is the direct result of the government's disregard of two court orders. The trial court *twice* ordered the government to provide Brown a bill of particulars, once on July 16, 2002, and again on August 15, 2002, after Brown filed a motion to compel.

The government failed to comply with either order. This failure resulted in the mistrial and subsequent delay until the new trial date, February 10, 2003. Because the Warden has failed to provide an explanation for the government's failure to comply with the trial court's orders, this more than two-week delay weighs against the government.

Over one year of the delay in this case is attributable to the government. Additionally, many of the government's delays are the direct result of the government's repeated inaction and failure to obey court orders. It is plain that the government bears greater culpability for the delay in this case, *see Bass*, 460 F.3d at 836, and this factor weighs heavily in Brown's favor.

### C. Assertion of the Right

The third factor is whether the defendant asserted his right to a speedy trial. "'The defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" *Brown*, 498 F.3d at 531 (quoting *Barker*, 407 U.S. at 531-32). This is so because "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. When considering this factor, we look to "[t]he timeliness, vigor, and frequency" with which the petitioner asserts the right as "probative indicators" of whether he was denied his right to a speedy trial. *Cain v. Smith*, 686 F.2d 374, 384 (6th Cir. 1982) (citing *Barker*, 407 U.S. at 528-29); *see also Maples*, 427 F.3d at 1030 ("[G]iven how vigorously Petitioner asserted his right, . . . this factor weighs strongly in Petitioner's favor.").

Between his arrest and trial, Brown asserted his right to a speedy trial three separate times. First, four months after his arrest, on November 21, 2001, Brown filed a pro se motion to dismiss the indictment, claiming violations of both his state and federal right to a speedy trial. Second, at a hearing on June 5, 2002, Brown argued to the trial court that his right to a speedy trial was violated. Third, Brown filed a motion to dismiss on speedy-trial grounds on August 7, 2002. Brown clearly, timely, and repeatedly asserted his right to a speedy trial. Accordingly, the third factor also weighs heavily in Brown's favor.

**D.  Prejudice to the Defendant**

To determine whether a defendant suffered prejudice as a result of pre-trial delay, courts must consider the three interests of the defendant the right was designed to protect: "(1) oppressive pretrial incarceration; (2) anxiety and concern of the accused; [and] (3) the possibility that the defense will be impaired." *Maples*, 427 F.3d at 1031 (citing *Barker*, 407 U.S. at 532). Brown contends he was both presumptively prejudiced by the government's delay and actually prejudiced by his pretrial incarceration.  Each of these will be discussed in turn.  *See Maples*, 427 F.3d at 1030-31 (separately addressing actual and presumptive prejudice under the fourth *Barker* factor).

1. *Presumptive Prejudice*

"[I]mpairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony 'can rarely be shown.'" *Doggett*, 505 U.S. at 655 (quoting *Barker*, 407 U.S. at 532).  For this reason, "affirmative proof of particularized prejudice is not essential to every speedy trial claim." *Id.*; *see also Redd*, 809 F.2d at 1272 ("[A]n affirmative showing of prejudice is not necessarily a prerequisite to establishing a speedy trial violation." (citing *Barker*, 407 U.S. at 533)).  Rather, courts must recognize "that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify." *Doggett*, 505 U.S. at 655.  A presumption of prejudice is not warranted in every case of delay, however. *Maples*, 427 F.3d at 1030.  "When the accused is unable to articulate the harm caused by the delay, the reason for the delay helps determine whether the delay was presumptively prejudicial." *Id.*  There are three types of delay within which a defendant's speedy-trial claim could fall, and "the role that presumptive prejudice should play" varies depending on which situation the defendant is in.  *Doggett*, 505 U.S. at 656.  The Supreme Court described the two extreme situations of "diligent prosecution," where pretrial delay is often inevitable and justifiable, and "bad-faith delay." *Id.*  Between those two poles is "official negligence in bringing an accused to trial." *Id.*  "While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence

automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him." *Id.* at 657.  Therefore, "'the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows.'" *Maples*, 427 F.3d at 1030 (quoting *Doggett*, 505 U.S. at 657).

Brown contends that the Warden's failure to explain or defend the government's misconduct means the government acted in bad faith.[3]  A more thorough look at the government's conduct is thus necessary.

a.  Misrepresentations to the Trial Court

As the Ohio Court of Appeals explained, on February 27, 2002, the government "represented to the court that it had requested a 'rush' on the DNA testing."  However, the government did not send Brown's samples to BCI to conduct the DNA tests until April 9, 2002—five weeks later.  Furthermore, on June 5, 2002, Deena Calabrese, the prosecutor, explained that since BCI was experiencing testing difficulties and had put a hold on genetic hair testing, the government wanted to send the sample to a private lab. She represented to the trial court that she was requesting a rush on the forensics and planned to send the sample by Federal Express the very next day.  But the government did not send the sample the next day, or the day after that.  Instead, it sat on the sample for *over two months*, until August 21, 2002. The government repeatedly underscored the importance of the DNA testing to the trial court and acknowledged the gravity of further delay, but then failed promptly to send the samples to the private lab for testing as it promised the trial court.  This delay is inexcusable.  As the government well knew, everyday the government dithered with the samples was another day the defendant languished in jail awaiting trial.  If this were the only needless delay involving some degree of duplicity, perhaps it might be excusable, but there is more.  At a hearing on August 2, 2002, the government told the trial court that the DNA *had been sent* to the

_____

[3]For example, when asked at oral argument whether the government made misrepresentations to the trial court regarding the status of the DNA testing, the Warden responded, "I have to deal with the record that I have."

private lab and that it was awaiting peer review.[4]  Seventeen days later, on August 19, 2002, the government again explicitly stated to the trial court that the private lab had received the sample, and that it had "indicated that peer review would be complete by next week."[5]  (R. 13-46, at 15-16; Motion for Judicial Notice 34-35.)  But, in fact, the samples had not yet been sent and were still not sent for another two days.

### b.  Failure to Obey Court Orders

Misrepresentations to the trial court were not the end of the government's misconduct in this case.  The trial court ordered the government to provide Brown a bill of particulars on July 16, 2002.  When the government failed to provide the bill, Brown filed a motion to compel and the trial court again ordered the government to do so.  But the government did not turn over the court-ordered bill of particulars to Brown until January 24, 2003, one day *after* Brown's first trial ended in a mistrial.  The government has not provided any explanation for its repeated failure to comply with the court's order.

Lastly, the much-anticipated DNA tests results were finally complete on September 3, 2002.  However, the government did not immediately turn over the results to Brown as it had repeatedly promised the court that it would, but again waited over two months until November 18, 2002.

The government's conduct in this case is more than troubling.  The actions and statements by the prosecution indicate indifference to the rights of the defendant and demonstrate lack of respect for the defendant, the trial court, and the justice system.  But in the context of speedy-trial cases, *bad faith* refers to situations where the government

---

[4] Attorney Michael Maillis appeared for the government at this hearing.  He stated, "I do know about the DNA, Judge.  I talked to Miss Calabrese [the prosecutor who appeared for the government in the other hearings in this case] this morning when she asked me to cover this hearing.  She sent the DNA, and it was awaiting peer review.  It had been sent to Cellmark Labs.  At some point it had been to the FBI. It probably had a long lag time.  So we sent it to Cellmark, and they are finishing the results but are doing a peer review."  (R. 13-46, at 13.)

[5] Prosecutor Calabrese stated to the trial court: "Your honor, I left a message with the forensic scientist at Orchid Cellmark this morning, and I simply left a message for when the final report would be available. . . . So Orchid Cellmark has indicated that peer review would be complete by next week." (Motion for Judicial Notice 34-35.)

"delays prosecution to 'gain some impermissible advantage at trial.'" *Darnell v. Berry*, No. 98-5494, 1999 WL 503512, at *1 (6th Cir. July 8, 1999) (quoting *Doggett*, 505 U.S. at 656).   While the misrepresentations and disobedience of court orders by the government in this case constitute more than "official negligence," without more, I cannot presume the government's conduct was motivated by bad faith. *See Brown*, 498 F.3d at 531 ("[A]lthough the burden of excusing delay rests with the [g]overnment . . . it cannot be presumed that the government acted with an improper motive." (internal quotation marks and citation omitted)).   Regardless, determining whether the government's conduct warrants a presumption of prejudice is unnecessary because Brown has demonstrated actual prejudice.

### 2. *Actual Prejudice*

Brown sat in jail awaiting his trial on the pending charges for 584 days.  Such circumstances are precisely the type that the speedy trial right aims to prevent.  The right to a speedy trial is "not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations.  The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *MacDonald*, 456 U.S. at 8.  The nineteen months Brown spent in pretrial incarceration constitutes actual prejudice.  *See Redd*, 809 F.2d at 1272 (holding that a ten-month incarceration was oppressive and constituted prejudice).

In concluding otherwise, the majority defers to the state court's determination that there was a valid parole holder pending against Brown and, therefore, the triple-count provision under Ohio Rev. Code § 2945.71 did not apply.  The state court's

conclusion was a correct application of its state speedy trial statute.[6] But the import of this determination must be assessed within the *Barker* prejudice framework.

In Ohio, a parole holder is active "when it is the only item restraining the offender." *See State v. Davis*, No. 01 CA 171, 2002-Ohio-2789, at ¶ 17. Conversely, where the defendant is otherwise held, the parole holder is inactive. *Id.* Brown was arrested on July 6, 2001 on the pending charges; the parole holder that was issued three days later, therefore, was inactive.[7] Relying on the Warden's statements at oral argument that the parole holder would have activated upon Brown's release, the majority discounts the entire nineteen months Brown spent in jail. But the Warden was unable to explain the implications of an "activation"—and rightfully so. Although the Warden implied that activation would result in jail time, the parole board has the discretion to impose various sanctions for post-release control violations, including curfew, community service, or a written reprimand. *See* Ohio Admin. Code 5120:1-1-17. Accordingly, it cannot be said that Brown "would have been incarcerated despite the charges at issue," Maj. Op. 16, for even one day, let alone the entire nineteen months. Thus, the state's determination that a parole holder existed has no effect on the *Barker* prejudice analysis. Brown's pretrial incarceration constituted prejudice, in precisely the form that the right to a speedy trial was designed to protect. *See MacDonald*, 456 U.S. at 8.

---

[6]Under Ohio law, if a valid parole holder exists, the defendant is deemed not to be held solely on the pending charges, regardless of whether the parole holder is active or inactive. *See State v. Davis*, No. 01 CA 171, 2002-Ohio-2789, at ¶ 17.

[7]Although noting that the record was devoid of any *evidence* of a parole holder, based on a deferential standard of review, the Ohio Court of Appeals accepted the prosecutor's naked assertions that Brown was arrested on July 6th by his parole officer for violations of post-release control and not on the pending rape charges. However, the notarized letter from Brown's parole officer clarifies: "[Brown was] arrested by the Youngstown Police Department on 7/6/01, for rape. An APA Hold order was lodged against [Brown] at the Mahoning County Justice Center on 7/9/01, for a parole violation. Since [Brown] never posted bond, the APA Hold order was never active." (R. 16-1, App'x 1.)

### III.  Conclusion

As this Court has previously explained, "[i]t is because the Sixth Amendment right to a speedy prosecution is so fundamental to our justice system, yet so difficult to define in a concrete manner, that it is incumbent upon our Court to zealously defend it." *Graham*, 128 F.3d at 376.  While none of the *Barker* factors are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," *Barker*, 407 U.S. at 533, *all four* factors weigh in Brown's favor.  But looking to the most important factors, the reason for the delay and prejudice to the defendant, confirms that the government's callous disregard for Brown's liberty—as he sat in jail for 584 days until he was finally given his day in court—deprived him of his Sixth Amendment right to a speedy trial.

Accordingly, I would **REVERSE** the judgment of the district court and **REMAND** to the district court for the grant of a writ of habeas corpus.