*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0331p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

    *v.*

JOHN BASS,

        *Defendant-Appellant.*

No. 04-1582

>

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-80235—Arthur J. Tarnow, District Judge.

Argued: June 5, 2006

Decided and Filed: August 30, 2006

Before: SILER, DAUGHTREY, and ROGERS, Circuit Judges.

---

## COUNSEL

**ARGUED:** John R. Minock, CRAMER & MINOCK, Ann Arbor, Michigan, for Appellant. Michael C. Leibson, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** John R. Minock, CRAMER & MINOCK, Ann Arbor, Michigan, for Appellant. Michael C. Leibson, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. John Bass, Terre Haute, Indiana, pro se.

---

## OPINION

---

ROGERS, Circuit Judge. In August 1997, John Bass was indicted on a single count of conspiracy to distribute cocaine base. He was taken into federal custody in September 1998 and arraigned the following month. Due to the complexity of the case, the numerous motions filed, and a lengthy interlocutory appeal that reached the Supreme Court of the United States, it was not until July 2003 that Bass was tried pursuant to his third superseding indictment. A jury convicted Bass of conspiracy to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base in violation of 21 U.S.C. § 846 and firearms murder during or in relation to a drug trafficking crime in violation of 18 U.S.C. §§ 924(j) and 2. Bass now appeals, arguing that (1) the government violated the Speedy Trial Act by delaying six years before trying him; (2) the government violated his Sixth Amendment right to a speedy trial; (3) the district court abused its discretion by not conducting an evidentiary hearing on his ineffective assistance of counsel claim; and (4) his sentence violated the Sixth Amendment and *United States v. Booker*, 543 U.S. 220 (2005). We affirm.

1

**I.**

Bass and his brother Patrick Webb distributed crack cocaine as business partners during the 1980s. By 1990, Bass and Webb had created two separate and sometimes cooperative drug organizations. Bass centered his operation in Detroit, expanding to Muncie, Indiana and then to Columbus and Canton, Ohio. He bought large amounts of cocaine powder, processed the cocaine into crack, and established crack houses.

Tensions grew between Bass and Webb over their drug businesses, and they frequently quarreled. One encounter between them escalated to the point of threatened violence when they both drew handguns. During 1995 and 1996, Bass told others that he intended to harm Webb. He told Lamont Chappell that he wanted "to do something" to Webb because Webb wanted to do something to Bass. Bass also told Carl Gooden that he did not trust Webb and that the "Boy got to go." Gooden understood that Bass intended to kill Webb. Around June 6, 1996, Bass formed a plan to kill Webb. The plan was to have Armenty Shelton, also known as "Fat Moe," kill Webb. Bass then would kill Shelton. Later, at a meeting between Gooden, Bass, and Shelton, Bass had Gooden tell Shelton how Webb had set Shelton up (presumably for arrest). Shelton responded that it would be easy to kill Webb.

On the morning of June 6, 1996, Gooden listened as Bass made several phone calls asking where to find Webb. Gooden overheard Bass state an address. Later that morning, four masked men drove up to that same address and killed Webb while he was standing in the driveway.

A few days later, Bass conducted a meeting at Ralph Webb's house to finalize plans for Shelton's murder. Bass arranged to meet with Shelton to make a drug deal. Gooden, Moore, Bass, Cornelius Webb, and Kobia Smith then went out to find Shelton. Meanwhile, Shelton left his girlfriend's house without his handgun. The murder transpired by a van's pulling up behind a parked car in which Shelton was sitting. During trial, the government presented testimony that Bass approached the car and shot Shelton several times. Cornelius Webb also fired into Shelton's car. Bass then returned to the van and traveled to Ralph Webb's house, while Ralph Webb and Desean Moore burned the van. Police linked Shelton to Patrick Webb's murder when they obtained the murder weapon from the residence of Shelton's girlfriend. Later, police found the weapon associated with Shelton's murder at the home of Bass and Gooden.

**II.**

Bass was arrested in Ohio in January 1997 on Michigan criminal charges. He was brought to Michigan, convicted, and sentenced on April 20, 1998, to five years of imprisonment. In the interim, a federal indictment was issued in August 1997, charging Bass with a single count of conspiracy to distribute cocaine base in violation of 21 U.S.C. § 846. Seventeen other individual defendants were indicted on the conspiracy charge.

In February 1998, this court decided *United States v. Ovalle*, 136 F.3d 1092, 1109 (6th Cir. 1998), invalidating the Eastern District of Michigan's Jury Selection Plan. Because the grand jury issuing the indictment had been empaneled in accordance with the plan that *Ovalle* rejected, several defendants moved to dismiss the indictment. In response, the district court stayed the proceedings to allow the government to bring a new indictment.

In May 1998, the government issued a superseding indictment charging Bass and fourteen other original co-defendants in the same conspiracy but extending the date of the offense to February 1998. In September 1998, Bass was taken into federal custody. He appeared in court on October 29, 1998, and was arraigned the following day. In December 1998, the government issued a second superseding indictment adding death-eligible murder counts for the murders of Derrick Poole,

Darius Hawthorne, Patrick Webb, and Shelton in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 924(j).

Bass filed a number of motions over the next year. He moved in January 1999 to dismiss the second superseding indictment, alleging, among other things, violations of due process and his right to a speedy trial under the Constitution and the Speedy Trial Act, 18 U.S.C. §§ 3161-74. The district court denied the motion. Bass renewed his motion to dismiss in March 2000, but it was again denied by the district court.

In September 2000, Bass filed a motion to dismiss the government's notice of its intent to seek the death penalty because of alleged racial discrimination and, in the alternative, for discovery pertaining to the government's capital charging practices. The district court granted the motion for discovery. When the government informed the court that it would not comply with the discovery order, the court dismissed the death penalty notice. The government filed an interlocutory appeal, which was ultimately decided in the government's favor by the Supreme Court of the United States in June 2002. *United States v. Bass*, 536 U.S. 862 (2002).

While the interlocutory appeal was pending, the government issued a third superseding indictment, charging Bass with conspiracy to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base in violation of 21 U.S.C. § 846 and the firearms murders of Patrick Webb and Shelton in relation to drug trafficking crime in violation of 18 U.S.C. §§ 924(j) and 2. Again, Bass moved to dismiss the indictment on speedy trial grounds, and the district court denied the request. A fourth superseding indictment was issued on in August 2002, alleging the same offenses as the previous indictment but adding specific death penalty aggravators as required by the then recently decided case of *Ring v. Arizona*, 536 U.S. 584 (2002).

Bass's trial began in July 2003. The government presented, among other things, the testimony of several of Bass's associates, including Carl Gooden, Ralph Webb, and Desean Moore, implicating Bass in the two murders. During Bass's case in chief, defense counsel informed the court in camera that he had subpoenaed Christopher McGlown to testify in rebuttal to Gooden's testimony for the government but that McGlown had not yet shown up.[1] Counsel asked the court to adjourn until the next day so that he could attempt to contact McGlown. The court granted the request, but McGlown never appeared the following morning. The defense therefore rested.

Before closing arguments, the district court sent the jury out and addressed Bass personally to "make sure that Mr. Bass understood and understands that he had a constitutional right to testify." Bass acknowledged that he had a right to testify and that his counsel had advised him of his right to testify.

The jury found Bass guilty of the first-degree murder of Shelton and of conspiracy to distribute five or more kilograms of cocaine and fifty or more grams of cocaine base. It acquitted Bass of Patrick Webb's murder. In the penalty phase, the jury had the option of imposing a sentence of either death or life in prison without the possibility of release. Defense counsel apparently did not want the jury to be given the option of imposing a term of years as it was inconsistent with her argument that there was no need to execute Bass because he would spend the rest of his life in prison if not given the death penalty. The jury declined to the impose the death penalty, opting instead to impose a life sentence. The district court later sentenced defendant to life in prison.

Shortly after the jury's verdict, Bass's trial counsel withdrew from the case, and the district court appointed substitute counsel. In January 2004, Bass moved for a new trial. He claimed that

---

[1] The name "McGlown" is spelled differently throughout the record and the parties' briefs. We use the spelling provided in Bass's appellate brief.

his trial counsel had been ineffective in four respects:  (1) by failing, after subpoenaing McGlown, to "use the US Marshall Service to enforce the subpoena," despite McGlown's letter stating that Gooden had told him Gooden was going to lie in his testimony against Bass; (2) by failing to use prior inconsistent statements to impeach the testimony of several prosecution witnesses that they were not involved in the murder of Derrick Poole; (3) by failing to call four witnesses—Jimmy Turner, Geneva Ashley, Amari Sabat, and Charles Bates—to support Bass's theory that he killed Shelton in self defense; and (4) by persuading Bass not to testify and, in doing so, precluding Bass from presenting his theory of self-defense.  In the alternative, Bass asked for a hearing to present evidence on these claims.

The district court denied the new trial motion and declined to hold an evidentiary hearing. Regarding the witnesses that allegedly would have supported Bass's self-defense theory, Bass was unable during oral argument before the district court to point to anything in the record indicating to what the witnesses would testify.  He further conceded that he had failed to provide the court with affidavits from the witnesses or Bass's trial counsel.  When asked by the court to proffer what he believed would be the witnesses' testimony, Bass replied that he could provide testimony concerning a threat by Shelton to kill Bass and that Shelton had tried to kill Bass's brother in 1993.  The court concluded that Bass's proffer as to what the witnesses would testify, even if true, did not establish that his trial counsel had been ineffective.  However, the court did indicate that if Bass could come up with some affidavits the court would be willing to revisit the issue.

### III.

#### A.       Speedy Trial Act

There was no Speedy Trial Act (STA) violation in this case because fewer than seventy nonexcludable days elapsed during the years between Bass's arraignment and trial.  The STA provides that a defendant must be tried within seventy days of the latest of either the filing of an indictment or information, or the first appearance before a judge or magistrate.  18 U.S.C. § 3161(c)(1).  Certain pretrial delays are excluded from this time.  For instance, "[i]f a motion requires a hearing, . . . Section 3161(h)(1)(F) . . . excludes all the time between the filing of the motion and the conclusion of the hearing on that motion. . . .   Once the hearing is concluded, . . . Section 3161(h)(1)(J) . . . excludes a maximum of 30 days from the day the motion is 'actually under advisement' by the court."  *United States v. Mentz*, 840 F.2d 315, 326 (6th Cir. 1988) (citations omitted).  At oral argument, Bass conceded that fewer than seventy days had elapsed in which motions were not pending or under advisement by the court.  Further, he does not argue that any of the motions did not require a hearing.  Rather, Bass argues that some of the motions should not have tolled the seventy-day limit because the delay attributable to them was not reasonable.  Thus, the only issue before this court concerning the STA is whether the tolling of the STA's time limit due to pending motions is subject to a reasonableness requirement.

Cases from both the Supreme Court and this circuit hold that there is no requirement that delays due to motions be reasonable.  In *Henderson v. United States*, the Court concluded that the STA, on its face, excluded from the seventy-day limitation "all time between the filing of a motion and the conclusion of the hearing on that motion, whether or not a delay in holding that hearing is 'reasonably necessary.'"  476 U.S. 321, 330 (1986); *see also Mentz*, 840 F.2d at 326 (stating that the "exclusion of the time prior to the conclusion of the hearing *is automatic*" (emphasis added)). Because motions were pending or under advisement during all but fewer-than-seventy days before Bass was tried, Bass can show no violation of the STA.

There is no merit to Bass's argument that the Ninth Circuit's decision in *United States v. Clymer*, 25 F.3d 824, 830 (9th Cir. 1994), precludes this court from excluding delay that is not directly attributable to consideration of the motion.  In *Clymer*, the court held that it was erroneous

for a district court to exclude 465 days of delay between the defendant's filing of a motion to dismiss and the hearing at the end of trial because the delay coincided with the motion but did not result from the motion. 25 F.3d at 830-31. Such a holding, however, conflicts with *Henderson*'s pronouncement that the exclusion of time due to pending motions is automatic. 476 U.S. at 327. Moreover, the Ninth Circuit has since backed away from *Clymer*. *United States v. George* distinguishes *Clymer*, stating that "the exception in [*Clymer*] (holding that time between filing of a pretrial motion and hearing was not excludable), applies only when a motion is decided after trial." 85 F.3d 1433, 1436 (9th Cir. 1996). As there is no evidence that any of Bass's motions were decided after his trial, *Clymer* is inapplicable to this case even under Ninth Circuit precedent. Therefore, the district court properly denied Bass's motions to dismiss for violations of the STA.**[2]**

## B.    Sixth Amendment Right to Speedy Trial

A weighing of the factors set forth by the Supreme Court for determining whether the right to a speedy trial has been violated shows that there was no such violation. The government was not to blame for the delay and there is no evidence that Bass suffered prejudice. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy trial and public trial." U.S. Const. amend. VI. In *Barker v. Wingo*, the Supreme Court set forth four balancing factors to determine whether the right to a speedy trial has been violated: (1) whether the delay was uncommonly long; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether prejudice resulted to the defendant. 407 U.S. 514, 530 (1972). No one factor constitutes a "necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Id.* at 533. "Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

### 1.    Whether the delay was uncommonly long

Under this court's precedent, the length of delay in Bass's case was presumptively prejudicial and thus we review the remaining three factors. The length of delay is measured from the earlier of the date of indictment or arrest to the defendant's trial. *Maples v. Stegall*, 427 F.3d 1020, 1026 (6th Cir. 2005). The length-of-delay factor serves as a threshold inquiry: if the length of the delay is not "uncommonly long," then the judicial examination ends, but a delay of one year is presumptively prejudicial and triggers application of the remaining three factors. *Id.* at 1026. In this case, although the parties dispute whether Bass's constitutional right to a speedy trial was first implicated on August 19, 1997, the date of the initial indictment, or on May 28, 1998, the date the superseding indictment was issued, there is no dispute that the delay between Bass's indictment and trial was over one year. Thus, we continue our examination of the remaining factors. *See id.* (holding a delay of twenty-five months between the arrest and the beginning of trial presumptively prejudicial, leading to further examination of the *Barker* factors).

### 2.    The reasons for the delay

The second *Barker* factor—the reasons for the delay—favors a finding that there was no constitutional violation. The purpose of the inquiry is to determine "whether the government or the criminal defendant is more to blame for [the] delay." *Stegall,* 427 F.3d at 1026 (citing *Doggett v. United States*, 505 U.S. 647, 651 (1992)). Some reasons weigh more heavily than others. For

---

**[2]**It is unclear whether Bass argues also that the government violated § 3161(b) by delaying in arraigning him because his brief does not refer to § 3161(b) or that provision's thirty-day limit. Nevertheless, his argument—that the fourteen-month delay between his initial indictment and arraignment violated the STA—fails as a matter of law because this court has held that "only federal arrest, as distinct from state arrest, triggers the protections of the Speedy Trial Act." *United States v. Copley*, 774 F.2d 728, 730 (6th Cir. 1985). Because Bass does not refer to any evidence showing when his federal arrest took place, any argument under § 3161(b) fails.

instance, government delays motivated by bad faith, harassment, or attempts to seek a tactical advantage weigh heavily against the government, while "more neutral" reasons such as negligence or overcrowded dockets weigh against the government less heavily. *Stegall,* 427 F.3d at 1026. Delays due to the complexity of the case and the large number of defendants support a finding that no Sixth Amendment violation occurred. *See United States v. Casas*, 425 F.3d 23, 33 (1st Cir. 2005).

Although Bass does not assert that the government delayed in bad faith, he argues that the government is to blame for the delays by conducting his arraignment fourteen months after the initial indictment. Bass also argues in general terms that the six-year delay before his trial was the fault of the government. In contrast, the government argues that most of the delay was due to the complexity of the case and to defense motions. The government further argues that approximately two years of the delay were attributable to the interlocutory appeal beginning with the defendant's motion for discovery on October 26, 2000, and ending on September 12, 2002.

The government's position is more persuasive because the government was not any more to blame than Bass for the delay. Although the delay from the indictment to the arraignment was fourteen months, for all but one month of this period Bass was in state custody. Delay "due to the obvious need to allow the defendant to be prosecuted by the State without interference by the federal government" is not the fault of the government. *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003). Moreover, the delay was in part due to this court's decision in *United States v. Ovalle*, which required that the government reindict Bass and his co-defendants.

With regard to the five-year period between Bass's arraignment and trial, it is apparent that the government was not any more to blame than Bass for this delay either. Bass's case was complex, involving a large-scale drug and murder conspiracy that, at one point, encompassed seventeen defendants. That the delay was caused by the case's complexity favors a finding of no constitutional violation. *See United States v. DeClue*, 899 F.2d 1465, 1469 (6th Cir. 1990); *see also Casas*, 425 F.3d at 33 (complexity of case excused delay of 41 months with 350 pretrial motions and 60 defendants). Furthermore, the record shows that much of the delay was caused by numerous defense motions, either by Bass or by one of his co-defendants. For example, Bass's September 2000 motion to dismiss the death penalty notice and for discovery relating to the government's capital charging practices caused the district court to stay the proceeding pending the government's interlocutory appeal, which ultimately reached the Supreme Court. Two years elapsed as a result of this appeal. Because the delay in this case was caused largely by the case's complexity and by the number of defense motions filed, and because Bass does not allege that the government acted in bad faith, the government was not more to blame than Bass for the six-year delay in bringing Bass to trial.

### 3.          *Whether Bass asserted his right to a speedy trial*

The third factor is Bass's assertion of his speedy trial rights. A "defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. Between his arraignment and trial, Bass filed three motions to dismiss based upon speedy trial grounds: (1) in January 1999, two months after the arraignment; (2) in March 2000; and (3) in March 2002. Accordingly, Bass asserted his right to a speedy trial, and this factor weighs in his favor.

### 4.          *Whether prejudice resulted to Bass*

The final *Barker* factor favors a finding that there was no speedy trial violation because Bass fails to provide any particular evidence of prejudice. The Supreme Court has identified three defense interests that a court should consider in a speedy trial case when determining whether a defendant suffered actual prejudice: (1) oppressive pretrial incarceration; (2) anxiety and concern

of the accused; and (3) the possibility that the defense was impaired. *Barker*, 407 U.S. at 532. Bass has failed to make any showing regarding the first two interests. He can show no oppressive lengthy pretrial incarceration because he was in federal custody only for approximately one month before his arraignment. Moreover, Bass does not allege that he suffered anxiety or concern. Therefore, our analysis focuses on the last defense interest, the possibility that the defense was impaired. Of the three interests, "the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious." *Id.*

But Bass likewise does not point to any evidence showing that his defense may have been impaired by the delay. Bass argues generally that the six-year delay resulted in prejudice because witnesses were unavailable to testify at the time of trial and because testifying witnesses' memories of the events had deteriorated. He also claims his own memory became poor due to head injuries he suffered during the pendency of his case, hampering his ability to aid in his own defense. Bass, however, does not state what testimony any missing witnesses could have provided, which witnesses' memories were affected, or how his own memory problems affected his defense. Accordingly, without a further showing, it is impossible for this court to discern prejudice from Bass's vague and unsupported assertions.

The four *Barker* factors, on balance, show that Bass has not suffered a violation of the Sixth Amendment right to a speedy trial. Although the delay of six years was presumptively prejudicial, the Supreme Court has noted that "presumptive prejudice cannot alone carry a Sixth Amendment claim," but rather must be considered in the context of the other factors, particularly the reason for the delay. *Doggett*, 505 U.S. at 656; *see also United States v. Loud Hawk*, 474 U.S. 302, 315 (1986) ("The flag all litigants seek to capture is the second factor, the reason for delay."). When delay is justified by a legitimate reason, such as complexity, a speedy trial claim will fail absent a demonstration of actual prejudice. *Doggett*, 505 U.S. at 656. In this case, where the delay was primarily due to complexity and pretrial motions, and Bass suffered no prejudice for the delay, Bass did not suffer a constitutional violation.

## C.     Ineffective Assistance of Counsel

The district court did not abuse its discretion by declining to grant Bass an evidentiary hearing before deciding the motion for a new trial because Bass failed to proffer any evidence that his trial counsel rendered ineffective assistance. Federal Rule of Criminal Procedure 33(a) provides that, upon a defendant's motion, the district court may grant a new trial "if the interest of justice so requires." Whether to hold an evidentiary hearing before deciding a motion for a new trial is within the discretion of the trial court. *United States v. Anderson*, 76 F.3d 685, 692 (6th Cir. 1996).

Bass sought a new trial on the ground that his counsel allegedly rendered ineffective assistance of counsel. To prevail on a motion for new trial based upon ineffective assistance, the defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defense in a manner that deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Bass now argues that the district court abused its discretion in refusing to hold a hearing because his trial counsel was deficient by: (1) failing to subpoena McGlown to rebut Gooden's testimony; (2) failing to impeach the testimony of several prosecution witnesses with their prior inconsistent statements regarding their involvement in the murder of Derrick Poole; (3) failing to call four witnesses to support Bass's theory that he killed Shelton in self defense; and (4) persuading Bass not to testify, thus precluding Bass from presenting his self-defense theory.

None of these bases for Bass's ineffective-assistance-of-counsel claim warrants a determination that the district court abused its discretion by not holding a hearing. The first basis fails because the record shows that counsel *did* subpoena McGlown but that McGlown simply never

showed up at trial.[3] The second basis fails because it was a reasonable trial strategy for counsel not to dwell on the Derrick Poole murder when there was an indication that Bass had been involved in the dismemberment and hiding of Poole's body. In fact, Bass at one point was charged with Poole's murder. The third basis fails because it was not an abuse of discretion for the district court not to hold a hearing on the issue of the uncalled witnesses when Bass failed to point to any evidence (e.g., affidavits), besides his counsel's bare assertion, of what the witnesses would testify to. *See United States v. Lauga*, 726 F.2d 1032, 1035 (5th Cir. 1984). Finally, the fourth basis fails because Bass acknowledged before the court that his counsel had informed him of his right to testify and that he did not wish to assert the right. We have held that, unless a defendant alerts the court that he wishes to testify or that there is a disagreement with counsel regarding his testifying, we presume he has waived the right to testify. *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000).

## D.     *Booker* Claim

Although the district court sentenced Bass believing that the Sentencing Guidelines were mandatory, this error under *United States v. Booker*, 543 U.S. 220 (2005), was harmless because the court was required to impose a sentence of life in prison for the first-degree murder conviction, pursuant to the jury's recommendation. Bass was convicted of conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 and the first-degree murder of Shelton in violation of 18 U.S.C. § 924(j). The murder offense was punishable by death, life imprisonment, or imprisonment for a term of years. § 924(j)(1). However, it appears that Bass's counsel for strategic reasons agreed to limit the jury's choice either to death or to life in prison. The jury chose life, and the district court sentenced Bass accordingly. At oral argument, Bass conceded that the court was required to impose the jury's recommended sentence of life imprisonment. *See also United States v. Ostrander*, 411 F.3d 684, 687-88 (6th Cir. 2005) (holding that the district court had no discretion to sentence the defendant, who was convicted under § 924(j), to a term of years after the jury had recommended life in prison). The court's *Booker* error was thus harmless because the court would have sentenced Bass to life in prison even if it had not considered the Guidelines to be mandatory.

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

---

[3] In his motion for a new trial before the district court, Bass conceded that his trial counsel had subpoenaed McGlown, but he argued that "counsel failed to use the US Marshal Service to enforce the subpoena." However, Bass's appellate brief's discussion of the ineffective assistance claim, which largely consists of a block quote from his motion for a new trial, states only that "defense counsel failed to subpoena [McGlown]." *See* Appellant's Br. at 47.