<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>

File Name: 15a0216n.06

Case No. 13-5982

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| | | **FILED** |
| | | Mar 18, 2015 |
| | | DEBORAH S. HUNT, Clerk |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| LEONARD BAUGH, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

BEFORE: GIBBONS, SUTTON, and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. A jury found Leonard Baugh guilty of conspiring to commit robbery in violation of the Hobbs Act, among other laws. Baugh challenges his Hobbs Act conviction on the ground that the government presented insufficient evidence to support the charge, and all of his convictions on the ground that the delay between his indictment and trial violated the Speedy Trial Act and the Sixth Amendment. Baugh also maintains that his sentence is procedurally and substantively unreasonable. We affirm.

I.

In May 2010, after the grand jury's sixth indictment, Leonard Baugh joined a growing cadre of codefendants in this large case. Two years and four more indictments later, the case

swelled to twenty-eight defendants covering forty-three counts, fourteen of which implicated Baugh. After a trial in January 2013, a jury found Baugh guilty of conspiring to violate the Hobbs Act, conspiring to distribute drugs, and committing related firearm offenses. *See* 18 U.S.C. § 924(c), 1951(a); 21 U.S.C. § 846. The district court imposed a within-Guidelines sentence of 570 months, to be served consecutively with an extant state sentence.

## II.

Baugh attacks his convictions on two fronts. Neither one gains ground.

*Sufficiency of the Evidence.* Baugh argues that a reasonable jury could not find that his plot to rob Cedric Woods—a drug dealer known as Lil Ced—affected interstate commerce, as required under the Hobbs Act. The Hobbs Act criminalizes any robbery that "obstructs, delays, or affects commerce," which includes all commerce "over which the United States has jurisdiction." 18 U.S.C § 1951(a), (b)(3). In the context of conspiracies that target a business, the government must establish a "realistic probability" of an effect on interstate commerce to meet the requirement. *United States v. Watkins*, 509 F.3d 277, 281 (6th Cir. 2007) (internal quotation marks omitted). Proof that the victim sold drugs originating out-of-state clears this low hurdle. *See United States v. Cecil*, 615 F.3d 678, 691–92 (6th Cir. 2010).

A reasonable jury could find the relevant connection to interstate commerce on this record. Baugh's brother and codefendant Adam Battle testified that the conspirators targeted Woods because they expected to find "bricks" of drugs at his house. R. 2031 at 43, 64. A jailhouse letter from Jamal Shakir, who came up with the plan, confirms that Shakir chose Woods because he "work[ed]" out of his house selling "dope" and kept "decent change" (money) there. R. 1966 at 34. Prison calls played for the jury capture Baugh discussing the "bricks" he planned to steal from Woods. *See* R. 1981 at 14. Battle testified that "bricks" referred to

2

cocaine. R. 2031 at 64. Other witnesses testified that cocaine originates from out of Tennessee. Kenneth Holden (otherwise known as Lil Wee Wee) testified that cocaine "ain't grown in Tennessee." R. 2011 at 51. And Christopher Leggs (otherwise known as Fat Chris) agreed. *See* R. 2054 at 44. The interstate movement of cocaine was supported by considerable evidence and not challenged, and no rational jury could have found to the contrary on this record. *Cf. Neder v. United States*, 527 U.S. 1, 17 (1999).

Baugh objects that, in the absence of testimony from Woods (who refused to take the stand), the government had no evidence that Woods *actually* dealt drugs. But that makes no difference in the context of a conspiracy because it requires proof only that the scheme would have affected commerce had it succeeded. *See United States v. DiCarlantonio*, 870 F.2d 1058, 1061 (6th Cir. 1989). Factual impossibility is immaterial.

*Speedy Trial Claims.* Baugh urges us to overturn his conviction on the ground that the thirty-two month delay between indictment and trial violates the Speedy Trial Act and the Sixth Amendment.

To establish a violation of the Speedy Trial Act, Baugh must show that his trial commenced more than 70 days after his indictment or initial appearance, whichever is later, not counting excludable time. *See* 18 U.S.C. § 3162(a)(2). The district court found the pretrial delay excludable. Because Baugh fails to explain why any particular period of delay is not excludable under the Act, he has forfeited any contrary argument. *See United States v. Phinazee*, 515 F.3d 511, 520 (6th Cir. 2008).

His Sixth Amendment argument requires more attention but in the end fares no better. To assess whether the delay violates the Constitution, we balance four factors: (1) the "[l]ength of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and

(4) "prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Factor one favors Baugh because delays over one year are "uncommonly long." *See United States v. Bass*, 460 F.3d 830, 836 (6th Cir. 2006).

The three remaining factors favor the government. As to the second factor, we cannot say that the government is "more to blame" for the delay. *United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003) (quoting *Doggett v. United States*, 505 U.S. 647, 655 (1992)). The sheer size and complexity of this sprawling gang case—featuring ten indictments, numerous defendants, voluminous discovery, over 1,800 pretrial docket entries—accounts for most of its length, which "favors a finding of no constitutional violation." *Bass*, 460 F.3d at 837. The defendants also share much of the blame for the delay because they filed hundreds of motions and obtained several continuances. *See United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011). Baugh twice filed dispositive motions on the eve of trial, for example, and twice sought new counsel (once successfully) because he and his attorney could not work together. *See United States v. Williams*, 753 F.3d 626, 633 (6th Cir. 2014). Some of the delay, to be sure, may stem from the government's perhaps inefficient decisions to seek new indictments. But at worst that means the government and the defendants in this case share responsibility for the delay, a reality that does not advance defendant's case given that the district court fairly found that the government prosecuted this case in good faith and with reasonable diligence. *See Doggett*, 505 U.S. at 652. This factor favors the government.

As to the third factor, Baugh's efforts to vindicate his speedy trial rights were mixed. On the one hand, he moved to sever his case, joined his codefendants' efforts to dismiss the indictment on speedy-trial grounds, and never joined any continuance motion of his codefendants. On the other hand, Baugh never objected (with one exception) to the continuance

4

requests, and he joined a proposed order that would have delayed the trial eight months. Viewed as a whole, this track record does not evince a strong or consistent concern with his Sixth Amendment rights. *See United States v. Loud Hawk*, 474 U.S. 302, 314 (1986); *Young*, 657 F.3d at 412.

As to the fourth factor, Baugh has not established prejudice from the delay. Delays over one year, it is true, pose a sufficient risk of prejudice to establish a prima facie denial of a speedy trial. *See Bass*, 460 F.3d at 836. But to *prevail*, Baugh needs more. Because the district court found that the government pursued the litigation with reasonable diligence, this delay does not carry any presumptive prejudice. *See United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000). Baugh therefore must show how the delay prejudiced his defense. *Id.* And he has made no attempt to do so. Nor does *Redd v. Sowders*, 809 F.2d 1266, 1270 (6th Cir. 1987), excuse this failure. That delay by contrast was wrongful, triggering the presumption of prejudice.

Baugh sees all of this differently. He maintains that the government all along had the requisite evidence supporting the charges against him and that the nine superseding indictments were a deliberate delay tactic. But he offers nothing to back up this theory. Evidence, not speculation, is required, particularly in the face of a contrary district court finding about the government's conduct. Baugh also argues that much of the delay arose from mismanagement and inattention by the district court. *See United States v. Graham*, 128 F.3d 372, 374–75 (6th Cir. 1997). Some motions indeed went unaddressed for months. Even so, the court held nearly fifty hearings, at least fifteen of which concerned motions. In light of the exceptional nature of this case and the court's duty to maintain the rest of its docket, we cannot say that the district court negligently shepherded the litigation to trial. The court did its part to vindicate Baugh's Sixth Amendment rights.

III.

Baugh also attacks on his sentence on two grounds. Both are unavailing.

*Procedural Reasonableness.* The district court's sentence is procedurally unreasonable, Baugh says, because the court failed to: (1) calculate the applicable Guidelines range; (2) consider the sentencing factors and his related arguments for a below-Guidelines sentence, *see* 18 U.S.C. § 3553(a); and (3) explain the chosen sentence, including why it ran consecutively to his state prison term. While the transcript may not be a model of ideal sentencing practices, it suffices to permit "meaningful appellate review" and to confirm the court did its job. *See United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). When it came to the Guidelines calculation, the court asked defense counsel to confirm that the range was 570 to 622 months, which he did. This exchange demonstrates that the court "acknowledge[d] during the hearing what it considered to be the applicable Guidelines range." *United States v. Grams*, 566 F.3d 683, 685 (6th Cir. 2009). Because Baugh's 570-month sentence falls at the very bottom of that undisputed range, the court was free to offer a relatively brief explanation. *See United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc).

The court's explanation reveals that it took into account the sentencing factors and considered Baugh's arguments for leniency, including his request for a concurrent sentence. Consideration of counterarguments need not invariably be explicit, especially for a within-Guidelines sentence. *Id.*; *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). After hearing argument and imposing its sentence, the district court grounded its judgment in the need for "specific deterrence and general deterrence" along with the "seriousness of the offense." R. 2439 at 22. The court declined to impose a fine, however, "considering [Baugh's] financial circumstances." *Id.* at 21. This discussion shows that the court considered the relevant factors,

including the "history and characteristics of the defendant," plus the need to address "the seriousness of the offense," "afford adequate deterrence," and "protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a)(1), (2). Having explained its choice of sentence, the court had no duty to explain why it chose *not* to impose an alternative one. *See United States v. Gale*, 468 F.3d 928, 940 (6th Cir. 2006). The same goes for the court's decision to impose the sentence consecutively to Baugh's outstanding state prison term. Right after announcing the length of the sentence, the court decided that Baugh must serve it consecutively with the state sentence, "intertwin[ing]" the rationales for both decisions and making additional explanation unnecessary. *See United States v. Johnson*, 640 F.3d 195, 208–09 (6th Cir. 2011).

As for Baugh's plea for a below-Guidelines sentence, the record confirms that the court considered that too. When the government's attorney invited the court to elaborate on its reasons for rejecting that plea, the court declined, reemphasizing that its sentence was based on "general deterrence." R. 2439 at 30. That answer demonstrates that the court considered Baugh's arguments but found the need for deterrence more compelling. The court's sentence contains no reversible flaw.

*Substantive Reasonableness.* Baugh contends that his sentence is unreasonably long for three reasons: (1) because his conspiracies never materialized, (2) because he had a tough upbringing, and (3) because he would be so old after serving the mandatory minimum that no additional deterrence or protection is necessary. On appeal, we presume a within-Guidelines sentence is reasonable. *See Vonner*, 516 F.3d at 389. Baugh has not rebutted that presumption. As a violent career offender and as a leader of multiple conspiracies, Baugh received a tough but just sentence.

For these reasons, we affirm.