RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0299p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 24-3432

ESKENDER GETACHEW,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:22-cr-00068-1—Michael H. Watson, District Judge.

Argued:  October 23, 2025

Decided and Filed:  November 3, 2025

Before:  SUTTON, Chief Judge; CLAY and GIBBONS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant.  Sofia M. Vickery, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant.  Sofia M. Vickery, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

───────────────

## OPINION

───────────────

SUTTON, Chief Judge.  Eskender Getachew is a medical doctor who operated a clinic in Columbus, Ohio, that provided treatment to patients suffering from opioid addiction.  The federal government alleged that Dr. Getachew unlawfully prescribed controlled substances, including

opioids, without a legitimate medical purpose. After a seven-day trial, a jury convicted him. Dr. Getachew challenges his conviction on several grounds. We affirm.

I.

"The opioid epidemic represents one of the largest public health crises in this nation's history." *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 209 (2024) (quotation omitted). Over the last three decades, opioid overdoses have taken the lives of hundreds of thousands of Americans, *see id.*, rendering the medical treatment of opioid addiction a public-health necessity.

One of the key medicines employed to treat opioid addiction is itself an opioid. The drug, buprenorphine, functions by partially activating specific receptors in the brain, satisfying an addict's cravings without giving him a high. The drug allows a patient to avoid painful withdrawal symptoms while focusing on recovery. But buprenorphine must be taken properly to work. If a patient dilutes buprenorphine and injects it directly into his bloodstream, it can produce a significant high.

To prevent this kind of abuse, medical guidelines advise addiction doctors to prescribe a combination drug sold under the brand name Suboxone. Suboxone combines buprenorphine with naloxone, an overdose-reversing medication. The naloxone acts as a blocking agent, preventing patients from getting a high even if they attempt to abuse the buprenorphine. Addiction doctors employ Suboxone in this way to help their patients reduce cravings and avoid withdrawal symptoms, all while minimizing the risk of abuse.

Some patients, unfortunately, suffer from naloxone allergies and may not safely take Suboxone. In those circumstances, addiction doctors prescribe a different drug called Subutex, which contains pure buprenorphine and no naloxone. Naloxone allergies are "exceedingly rare," R.79 at 76, and addicts have strong incentives to falsely claim an allergy to obtain Subutex. Subutex is not only much easier to abuse than Suboxone, but it also has a much higher street value. Medical guidelines direct doctors to verify any claimed allergy before prescribing Subutex.

Dr. Getachew operated a medical clinic that provides these treatments.  Like other addiction doctors, Dr. Getachew employed Suboxone to treat many of his patients.  Less like other doctors, he liberally prescribed Subutex too.   Before his arrest, Dr. Getachew was prescribing Subutex to 40–50% of his patients, an "astronomically high" level given the rarity of naloxone allergies.  R.78 at 84.  At one point, pharmaceutical representatives expressed concern to Dr. Getachew that his clinic accounted for a "very high percentage" of all patients nationwide claiming a naloxone allergy.  R.78 at 117–18.  Alarmed pharmacists called Dr. Getachew's office with reports that his patients requested specific colors or brands of pills, a "red flag" that patients were maximizing the street value of their prescription drugs.  R.78 at 118–19, 128.

Authorities caught wind of these irregularities in 2017 when Dr. Getachew applied for a state license for his clinic.  Upon reviewing his application and realizing the frequency with which he prescribed Subutex, they opened a criminal investigation.

A federal grand jury returned an indictment charging Dr. Getachew with fifteen counts of unlawful distribution of a controlled substance by a physician.  *See* 21 U.S.C. § 841(a).  His trial lasted seven days.  The jury heard from five government witnesses, including an undercover police officer who visited the clinic posing as a patient, a former clinic employee, a former patient, and an expert who analyzed the clinic's medical records for deviations from the medical standard of care.

The trial revealed several instances in which Dr. Getachew wrote prescriptions inconsistent with standard medical practice.  The doctor, as one example, prescribed Subutex to a patient on account of a naloxone allergy, yet the patient's medical record offered no documentation of the allergy.  What's more, the medical record indicated that the patient's urine consistently tested positive for naloxone despite the claimed allergy, a result that a handwritten margin note called "highly suspect!"  R.79 at 131–32.  Dr. Getachew nonetheless continued to prescribe Subutex to the patient.  The government's evidence showed a similar pattern for other patients.  Despite aberrant drug test results and even reports to the clinic that a patient sold his pills, Dr. Getachew continued signing prescriptions.

The jury found Dr. Getachew guilty on eleven counts and not guilty on four others.  The court imposed concurrent sentences of six months for each guilty count, as well as three years of supervised release.

II.

On appeal, Dr. Getachew challenges his conviction in five ways.

*Sufficiency of the evidence.*  Dr. Getachew contends that the government failed to prove that he knew his prescriptions were unauthorized.  Because Dr. Getachew did not move for acquittal at the close of evidence, his challenge fails unless his conviction represents a "manifest miscarriage of justice."  *United States v. Sherer*, 770 F.3d 407, 411 (6th Cir. 2014) (quotation omitted).  That means the record must be "devoid of evidence pointing to guilt."  *Id.* (quotation omitted).  In making this determination, we view the evidence in the light most favorable to the government.  *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

To prove its case, the government had to establish that Dr. Getachew distributed controlled substances without authorization, namely without a legitimate medical purpose and outside the usual course of medical practice.  *See* 21 U.S.C. § 822(b); 21 C.F.R. § 1306.04(a).  The government also had to prove that Dr. Getachew either knew or intended his conduct to be unauthorized.  *Ruan v. United States*, 597 U.S. 450, 457 (2022).  A jury may rely on direct or circumstantial evidence to find that a defendant doctor knew a prescription lacked authorization.  *See United States v. Bauer*, 82 F.4th 522, 529 (6th Cir. 2023).

The evidence sufficed to find these elements of the crime.  The record contained "ample circumstantial evidence" from which the jury could "infer . . . subjective knowledge of unauthorized distribution."  *Id.*  Dr. Getachew routinely violated the standard of care described by the government's medical expert.  And the jury could reasonably conclude that repeated and brazen violations of medical norms don't happen by mistake.

The record is replete with evidence that supports that inference.  Dr. Getachew regularly prescribed drugs to patients who had no documented need for them.  The doctor, in one instance, prescribed Suboxone to an undercover agent posing as a patient, even though the agent used

synthetic urine in each of her drug screenings, meaning that none of her drug tests showed any signs of her claimed oxycodone addiction. Dr. Getachew also prescribed Subutex to several patients without any supporting documentation for their claimed naloxone allergies, and continued prescribing Subutex to one of them after the "highly suspect!" test result showed that the patient had taken naloxone. R.79 at 131–32.

The evidence also permits the inference that Dr. Getachew routinely failed to examine his patients. The medical charts for every patient named in the indictment contained identical examination notes for every appointment. Worse, the notes for all named male patients contained verbatim language about supposed observations of the patients' menstrual cycles, a giveaway of the copy-and-paste makeweight of the notes.

Dr. Getachew continued issuing prescriptions despite significant red flags that patients diverted their medications. At one point, for example, the clinic received a report that one of Dr. Getachew's patients sold his prescribed medications. The report is recorded in the patient's chart. But Dr. Getachew never stopped signing the patient's prescriptions.

In view of "the compounding of this circumstantial evidence," no miscarriage of justice occurred when the jury found that Dr. Getachew "*knew* his prescriptions were without authorization." *Bauer*, 82 F.4th at 529. The sufficiency challenge fails.

Dr. Getachew responds that the record contains "overwhelming evidence" that he ran "a thoughtful, careful practice and did not intentionally break any law." Reply Br. 7–8. But our role is not to reweigh the evidence. When we view the evidence in the light most favorable to the government, as we must, it becomes clear that no manifest miscarriage of justice occurred. Dr. Getachew's other virtues as a physician "cannot overcome the force of the Government's presentation, especially under this deferential standard of review." *Sherer*, 770 F.3d at 412.

*Deliberate-ignorance instruction.* Dr. Getachew contends that the district court erred when it gave a deliberate-ignorance jury instruction. Because Dr. Getachew challenges the instruction on a ground he did not raise below, plain-error review applies. Fed. R. Crim. P. 30(d), 52(b); *see United States v. You*, 74 F.4th 378, 391 (6th Cir. 2023). Under that standard, we may reverse "only if there is (1) an error (2) that is plain, (3) that affected the party's

substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Henry*, 797 F.3d 371, 374 (6th Cir. 2015) (quotation omitted).

A deliberate-ignorance instruction prevents a defendant from avoiding criminal liability by purposely "closing his eyes to the obvious." *United States v. Stanton*, 103 F.4th 1204, 1212 (6th Cir. 2024). In cases like this one, the instruction "prevents clinic owners and providers from claiming a lack of knowledge of illegal operations despite awareness of serial red flags." *Id.* at 1213. A district court, we have explained, should give this instruction "sparingly" and only when "the defendant claims to lack guilty knowledge and the evidence would support an inference of deliberate ignorance." *United States v. Agrawal*, 97 F.4th 421, 434 (6th Cir. 2024) (quotation omitted).

There is room for debate over whether the court should have given a deliberate-ignorance instruction. On the one hand, Dr. Getachew's primary defense at trial was that he "issued all" the prescriptions "for a legitimate medical purpose," not that he was kept in the dark by co-conspirators or patients. R.82 at 207 (defense expert testimony). On the other hand, Dr. Getachew consistently argued that he didn't know he was issuing unauthorized prescriptions. Dr. Getachew's counsel returned to this theme in both his opening and closing arguments, insisting that the jury needed to decide whether Dr. Getachew "[knew] what he was doing was wrong." R.83 at 26 (closing argument); *accord* R.78 at 47 (opening argument). We hesitate to say that the district court erred—let alone plainly erred—in giving a deliberate-ignorance instruction when Dr. Getachew repeatedly put his own knowledge at issue.

Either way, we need not decide whether the court erred in giving the instruction, as the instruction did not affect Dr. Getachew's substantial rights. "[W]hen a court tells a jury that it may convict a defendant based on either the defendant's actual knowledge or the defendant's deliberate ignorance, courts will find any sufficiency-of-the-evidence problems with the deliberate-ignorance instruction harmless if sufficient evidence showed the defendant's actual knowledge." *Agrawal*, 97 F.4th at 434. As discussed, the government "presented enough evidence to support a conviction based on the defendant's actual knowledge (as opposed to the

defendant's deliberate ignorance)." *Id.* (quotation omitted). Any error thus did not affect Dr. Getachew's substantial rights.

Dr. Getachew responds that plain-error review does not apply. Because he objected to the deliberate-ignorance instruction on another ground, he contends that the district court had the opportunity to correct the error. But an objection to an instruction on one ground does not suffice to preserve an argument on appeal on another ground. To avoid plain-error review, a party must inform the district court of the party's "specific objection" and the "grounds" for that objection. Fed. R. Crim. P. 30(d).

Dr. Getachew's written objection to the deliberate-ignorance instruction falls short. In its entirety, his objection read: "I object to this instruction. I believe it is not warranted under *Ruan*. I believe it is inconsistent with *Ruan*." R.41 at 44. Dr. Getachew's counsel also orally raised the objection but did not articulate any additional arguments in its support, maintaining only that a deliberate-ignorance instruction does not satisfy *Ruan*'s requirement that the government prove a defendant doctor's subjective knowledge that his conduct lacked authorization. Dr. Getachew never mentioned any concern, now the focus of this appeal, about the evidentiary foundation for the instruction. On this record, plain-error review applies.

*Content of deliberate-ignorance instruction.* Dr. Getachew separately contends that the deliberate-ignorance instruction misstated the law. Plain-error review again applies because, as the doctor concedes, he did not argue the point below. Reply Br. 4; *see* Fed. R. Crim. P. 30(d), 52(b).

The district court did not err, plainly or otherwise, in crafting this instruction. We have "repeatedly described" our pattern deliberate-ignorance instruction "as an accurate statement of the law." *Agrawal*, 97 F.4th at 435 (quotation omitted); *see, e.g.*, *United States v. Daneshvar*, 925 F.3d 766, 782 n.5 (6th Cir. 2019) (collecting cases). The instruction in this case closely mirrored the pattern instruction. *Compare* R.83 at 76–77, *with* Sixth Circuit Pattern Jury Instruction 2.09 (2025). No error occurred.

In resisting this conclusion, Dr. Getachew claims that the pattern instruction contains an error that our cases have overlooked. His argument relies entirely on a single word in the

instruction and a single sentence in one of our opinions.  The instruction cautions the jury that "[c]arelessness or negligence or *foolishness*" on the part of the defendant "is not the same as knowledge and is not enough to convict."  R.83 at 77 (emphasis added).  Dr. Getachew contends that the instruction misstates the law when it mentions foolishness.  The basis of his argument is a single line from one of our cases, *United States v. Stanton*:  "A deliberate ignorance instruction satisfies *Ruan* when, as here, it reminds the jury that this standard sits well above carelessness, negligence, and *mistake*."  103 F.4th at 1213 (emphasis added).  Claiming that "mistake" and "foolishness" have different connotations, Dr. Getachew maintains that the instruction deviates from our caselaw.

This argument faces two problems.  First, we are not convinced that "mistake" and "foolishness" describe meaningfully different concepts in this context.  Both words describe a lack of judgment.  Inserting either word into the pattern instruction ensures that a jury knows not to convict a defendant merely because he is a fool or a mistake-prone individual.  That insistence on subjective knowledge, rather than generally poor judgment, suffices to satisfy *Ruan*.

Second, *Stanton* does not support Dr. Getachew's argument.  *Stanton* held that the deliberate-ignorance instruction in that case sufficiently reminded the jury not to convict the defendant for mere "carelessness, negligence, [or] mistake."  *Id.*  But the *Stanton* jury instruction itself used the exact same "carelessness or negligence or foolishness" language to which Dr. Getachew objects.  Jury Instructions at 22, *United States v. Stanton*, 103 F.4th 1204 (6th Cir. 2024) (No. 241).  What's more, the single sentence from *Stanton* upon which Dr. Getachew relies precedes citations to two cases, each of which upheld a jury instruction containing the word "foolishness."  *United States v. Anderson*, 67 F.4th 755, 766 (6th Cir. 2023); *United States v. Hofstetter*, 80 F.4th 725, 731 (6th Cir. 2023).  Even the cases cited by Dr. Getachew, in short, permit the "foolishness" formulation.

"[T]he language of an opinion," it is worth remembering, "is not always to be parsed as though we were dealing with the language of a statute."  *Brown v. Davenport*, 596 U.S. 118, 141 (2022) (quotation omitted).  So it is here.  An overreading of a single word in a single case does not establish plain error.

*Presence at return of verdict.* Dr. Getachew claims that the district court violated his right to be present for delivery of the verdict. *See* Fed. R. Crim. P. 43(a)(2). After hearing the evidence, the jury deliberated for a day and a half. When the district judge reconvened to receive the verdict, counsel for the government and the defense were present in the courtroom. But Dr. Getachew was not. Noticing Dr. Getachew's empty chair, the judge remarked that Dr. Getachew "[a]pparently didn't think it was important enough to be here for this." R.84 at 3. The jury handed down the verdict, the judge polled each juror, and the court excused the jury. Defense counsel did not object to or explain Dr. Getachew's absence.

After the jury left, defense counsel told the judge that Dr. Getachew's absence was "my fault." R.84 at 7. Dr. Getachew eventually appeared in the courtroom around 25 minutes later. Defense counsel explained that he advised Dr. Getachew that he could leave the courthouse during deliberations: "In my experience, usually, we don't have to stay in the courthouse, but we have to be close by. And I was not clear with my client that he should be close by and waiting for the deliberations." R.84 at 7. At no point did counsel or Dr. Getachew raise an objection.

Dr. Getachew claims that this series of events violated his right to be present for "every trial stage, including . . . the return of the verdict." Fed. R. Crim. P. 43(a)(2). Because Dr. Getachew did not object below, plain-error review applies.

We need not decide whether the district court committed error in receiving the verdict because Dr. Getachew cannot show that his absence affected his substantial rights. To succeed under this standard, a defendant must demonstrate "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Greer v. United States*, 593 U.S. 503, 507–08 (2021) (quotation omitted). Dr. Getachew cannot make that showing. By the time the jury returned to the courtroom, it had already reached a verdict, and there was no role for him to play with respect to the soon-to-be-delivered verdict. No evidence thus shows, or even suggests, that the defendant's absence had the potential to change the verdict. *See Rice v. Wood*, 77 F.3d 1138, 1143–45 (9th Cir. 1996) (en banc).

Dr. Getachew responds with a concern that such a conclusion will "hollow" out defendants' right to be present for critical stages of trial, giving courts discretion to do away

with the right "in the name of expediency." Reply Br. 15. Not so. If a defendant wants to preserve his right to attend trial, he just has to show up. And if a situation of involuntary absence arises—such as a hospitalization, *see United States v. Novaton*, 271 F.3d 968, 996–97 (11th Cir. 2001)—a timely objection will preserve the defendant's right to be present. No plain error occurred.

*Evidentiary hearing.* Dr. Getachew challenges the district court's failure to hold an evidentiary hearing on his motion for a new trial. About six weeks before trial, the government offered Dr. Getachew a plea deal. If Dr. Getachew pleaded guilty to one count of unlawful distribution, the government would dismiss all remaining counts, agree to a guidelines advisory range of zero to six months' imprisonment, and recommend a sentence of probation.

Dr. Getachew's counsel relayed that offer to the doctor and his family via email. Counsel explained that, although the plea would likely result in probation, the sentence would ultimately be "in the hands of the judge," who could sentence Dr. Getachew to up to "10 years in prison" under the deal. R.89-1 at 1. If, on the other hand, Dr. Getachew rejected the deal and a jury found him guilty on all counts, his counsel explained that he "could receive a sentence that would essentially place you in prison for the remainder of your life"—up to "10 years per count." R.89-1 at 1. Counsel said that he was "cautiously optimistic about our case" but could not "guarantee that [Dr. Getachew] will not be convicted of any counts in the indictment." R.89-1 at 1. He encouraged the doctor to consider a guilty plea's effect on his collateral matter pending before the state medical board, and he reiterated that "[i]t is your life, and thus, your decision." R.89-1 at 1.

Although Dr. Getachew responded with interest in setting up a conference call between his family and the attorney, a call never occurred. The next week, Dr. Getachew texted his counsel to reject the plea deal, as he was "not going to accept what I did not do." R.89-3 at 2. The case proceeded to trial.

A few weeks after the jury returned its verdict, Dr. Getachew ended his relationship with his trial counsel. Represented by new attorneys, Dr. Getachew moved for a new trial, arguing that trial counsel had rendered ineffective assistance of counsel "in the plea negotiation stage."

No. 24-3432 *United States v. Getachew* Page 11

R.89 at 1. Dr. Getachew attached a copy of trial counsel's email to his motion. In his reply brief, Dr. Getachew requested an evidentiary hearing. The district court refused to hold one and denied his motion.

On appeal, Dr. Getachew challenges the district court's denial of an evidentiary hearing. "Whether to hold an evidentiary hearing before deciding a motion for a new trial is within the discretion of the trial court." *United States v. Bass*, 460 F.3d 830, 838 (6th Cir. 2006). We thus review the district court's denial for abuse of discretion. *See United States v. Anderson*, 76 F.3d 685, 692 (6th Cir. 1996).

A district court does not abuse its discretion in denying a request for an evidentiary hearing when the defendant "fail[s] to proffer any evidence that his trial counsel rendered ineffective assistance." *Bass*, 460 F.3d at 838. A defendant must "produce at least a modicum of evidence in support of a request for an evidentiary hearing on a motion for a new trial based on ineffective assistance of counsel." *United States v. Allen*, 254 F. App'x 475, 478 (6th Cir. 2007).

Dr. Getachew failed to produce any evidence of unconstitutional assistance. The doctor needed to prove that his counsel's performance was objectively deficient, and that the deficiency prejudiced his case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). But he did not produce any evidence in support of either proposition.

As to performance, the evidence undermined rather than supported his argument. The submitted email showed that counsel thoroughly described the consequences of accepting the plea as well as the risks of going to trial. Dr. Getachew did not provide any evidence about why a follow-up phone call was constitutionally necessary after this comprehensive email. All that Dr. Getachew's evidence showed was that he "received all the information needed to make an informed decision on whether to accept the plea deal from his counsel." *Logan v. United States*, 910 F.3d 864, 871 (6th Cir. 2018).

As to prejudice, Dr. Getachew "never assert[ed] in his moving papers that he would have accepted the plea offer had his counsel done anything differently." R.97 at 8. Dr. Getachew thus did not produce any evidence that the purported ineffectiveness prejudiced him.

Dr. Getachew resists this conclusion on the ground that this approach flips the applicable legal standard.  In support, he invokes cases stating that district courts must hold an evidentiary hearing "unless the record conclusively shows that the petitioner is entitled to no relief." *Villa v. United States*, 56 F.4th 417, 420 (6th Cir. 2023) (quotation omitted); *see also Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019).  All of this shows, he maintains, that we should be looking to whether the record affirmatively forecloses his claim, not to whether he produced any evidence to support his claim.

But the cases Dr. Getachew cites do not apply in the context of a motion for a new trial. The cases instead arise out of motions to vacate under 28 U.S.C. § 2255.  That statute requires a court to "grant a prompt hearing" unless "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Dr. Getachew does not offer any basis or authority for applying § 2255's legal standard to a motion for a new trial.

Because Dr. Getachew did not produce any evidence of ineffective performance or prejudice, the district court did not abuse its discretion in denying his request for an evidentiary hearing.  Dr. Getachew's challenge fails.

We affirm.