NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0791n.06

No. 15-5209

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 04, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| BRICE MARCHBANKS, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: SUTTON and KETHLEDGE, Circuit Judges; BECKWITH, District Judge.[*]

KETHLEDGE, Circuit Judge. A jury convicted Brice Marchbanks of four counts related to a conspiracy to distribute drugs in violation of 21 U.S.C. § 841(a)(1). Marchbanks challenges the delay before his trial, the sufficiency of the evidence at trial, and the application of a two-level enhancement at sentencing. We affirm.

I.

In 2009, a police investigation into the Rollin' 60s Crips in Nashville, Tennessee revealed that the Crips had targeted Brice Marchbanks in a robbery. Marchbanks ran a drug operation out of his apartment, using two middle-school runners to work the door. When a buyer would knock, one of Marchbanks's runners would fetch the drugs, return to the door, and complete the sale. When the Crips attempted to rob Marchbanks, they posed as customers and then forced their way into the apartment while Marchbanks weighed the drugs. In the ensuing struggle, the Crips shot Marchbanks and then fled without money or drugs.

---

[*] The Honorable Sandra S. Beckwith, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

Before seeking medical care, Marchbanks asked one of his runners to help him remove incriminating evidence from his apartment. They wiped down the kitchen to remove any drug residue and hid the drugs and various firearms behind a house across the street. Marchbanks then went to the hospital with a gunshot wound, which—as Marchbanks expected—triggered a police inquiry. Marchbanks told the police he had been shot during a real estate showing gone awry. According to Marchbanks, he had an agreement with the owner of the adjacent unit for a commission on any renters he referred. When Marchbanks showed two potential renters his own unit (to demonstrate the layout of an adjacent one) they drew weapons, demanded money, and then shot Marchbanks when he refused to comply.

Soon thereafter, Marchbanks ordered his cousin and a runner to retaliate against the person whom Marchbanks believed responsible for the attempted robbery. They found the target at home. Marchbanks's cousin shot him in the face, and then two more times after he fell to the ground, using a P89 Ruger that belonged to Marchbanks. The target's mother witnessed the murder and recognized the runner's face. The runner was soon arrested.

In October 2011, the government charged Marchbanks with maintaining a drug-involved premises and possessing a firearm in furtherance of drug trafficking in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 924(c). Rather than charging Marchbanks alone, however, the government rolled his charges into a Superseding Indictment in the prosecution of a larger drug conspiracy involving the Crips. On November 9, 2011, Marchbanks pleaded not guilty to the charges. The investigation continued and the number of defendants and related proceedings mounted.

Five months later, on April 6, 2012, Marchbanks filed a motion to sever his case from those of his co-defendants and to continue his April 17, 2012 trial date. The district court had

not ruled upon that motion when, on December 12, 2012, Marchbanks joined a co-defendant's motion to dismiss the charges on the basis of a Speedy Trial Act violation. A week later, the district court granted Marchbanks's motion to sever, with no objection from the government. But the district court denied the motion to dismiss in part because of the case's complexity: All told, the government brought 43 counts in 11 indictments against 28 defendants. Marchbanks and his co-defendants filed over 400 motions, including six motions to dismiss. The district court held more than 15 motion hearings, 12 plea hearings, and 18 status conferences.

In May 2013, the government added two additional charges against Marchbanks in a 10th Superseding Indictment: conspiracy to distribute, and possession with intent to distribute, various controlled substances in violation of 21 U.S.C. § 841(a)(1), and distribution of controlled substances to a person under 21 in violation of 21 U.S.C. § 859. Marchbanks again moved to continue his trial date. The district court granted the motion. In September 2013, Marchbanks requested a psychiatric evaluation, which required another continuance. In January 2014, Marchbanks joined the government in moving for another continuance. The government requested, and the court granted, a final continuance in May 2014. In each order granting a motion to continue, the district court concluded that the delays were justified under the Speedy Trial Act by either the ends of justice or the complexity of the case.

In September 2014, a jury convicted Marchbanks on all four of the charges against him. Marchbanks moved for a new trial, arguing that insufficient evidence supported the verdict and that the district court erred in one of its evidentiary rulings. The district court denied the motion and sentenced Marchbanks to 248 months imprisonment. This appeal followed.

II.

Marchbanks challenges the district court's denial of his motions to dismiss and for a new trial, and its application of a sentencing enhancement for obstruction of justice.

A.

Marchbanks first argues that the district court should have dismissed the charges against him because his delayed severance from his co-defendants violated his rights under the Speedy Trial Act and the Sixth Amendment. To prevail under the Speedy Trial Act, Marchbanks must show that his trial started more than 70 days after his initial appearance, not counting excludable time. *See* 18 U.S.C. § 3162(a)(2). Marchbanks contends that the 13-month delay between his initial appearance and severance of his case violated the Act. *See* Marchbanks Br. at 13-14. But five months into the 13-month delay, Marchbanks filed a motion to continue, a motion to sever, and—after "be[ing] advised of [his] rights under the Speedy Trial Act"—a waiver of "any rights [he] may have under the Speedy Trial Act . . . with respect to a continuance[.]" R. 1062-1 at 1. In his brief to our court, Marchbanks concedes the excludability of delays that "occurred as a result of [his own] motion for a continuance[.]" He also concedes that, "during the same period, many motions . . . and at least one more superseding indictment" resulted in additional "excludable periods of delay[.]" And Marchbanks neither identifies a delay that was not excludable under the Act, nor explains where the district court erred in holding otherwise. His argument is meritless. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Marchbanks's next contention—that the real speedy trial violation was the government's initial decision to indict him with his codefendants—is not cognizable under the Speedy Trial Act. Marchbanks cites no authority for his claim of wrongful joinder, recites no standard, and

makes no meaningful "effort at developed argumentation[.]" *Id.* at 995. Hence this contention is meritless.

Marchbanks next contends that the delay violated his Sixth Amendment right to a speedy trial. We consider such claims in light of four factors: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *United States v. Howard*, 218 F.3d 556, 563 (6th Cir. 2000). Delays of more than a year are "uncommonly long." *See United States v. Bass*, 460 F.3d 830, 837 (6th Cir. 2006). The first factor thus favors Marchbanks.

The second factor—the reason for the delay—favors the government. Of the three years between Marchbanks's arraignment and trial, Marchbanks challenges only the 13 months between his initial appearance in November 2011 and his severance from the other defendants in December 2012. But eight months of this delay resulted from Marchbanks's own motion to continue his trial date. Such delays do not count toward Sixth Amendment violations. *See Howard*, 218 F.3d at 564.

Nor is there any indication that the government wrongfully delayed his trial. *See United States v. Schreane*, 331 F.3d 548, 554 (6th Cir. 2003). Rather, as we have already concluded in another appeal in this case, "[t]he sheer size and complexity of this sprawling gang case—featuring [eleven] indictments, numerous defendants, voluminous discovery, over 1,800 pretrial docket entries—accounts for most of its length, which favors a finding of no constitutional violation." *United States v. Baugh*, 605 F. App'x 488, 492 (6th Cir. 2015) (internal quotation marks omitted).

Third, the defendant's assertion of his rights is often "closely related" to the reason for the delay. *Barker v. Wingo*, 407 U.S. 514, 531 (1972). That is particularly true here. Although

Marchbanks moved to sever his case from those of his co-defendants and moved for dismissal on speedy-trial grounds, his repeated continuances undermined his efforts to vindicate his rights by causing more than half the delay he now challenges. Even after the challenged period, Marchbanks filed another motion to continue, joined the government's motion to continue, and requested a competency examination that triggered a continuance from the district court *sua sponte*. These are not the actions of a defendant diligently asserting his right to a speedy trial. *See id.* at 532.

Finally, we review speedy-trial claims for three types of prejudice to a defendant: oppressive pretrial confinement, excessive anxiety and concern, and the possibility of an impaired defense—the last being the most important. *Bass*, 460 F.3d at 837. Marchbanks points only to his pretrial confinement in a county jail as the source of his prejudice, "even excluding the periods of delay that resulted from his" own actions. But five months in the county jail— while awaiting trial in a complex case—is by no means oppressive under the Sixth Amendment. And the presumption of prejudice for delays longer than a year only applies in cases where the delay was wrongful, rather than the natural result of the complexity present here. *Compare Howard*, 218 F.3d at 564, *with Redd v. Sowders*, 809 F.2d 1266, 1270 (6th Cir. 1987). In light of the various delays triggered by Marchbanks, the complexity of this case, and the relatively modest remaining delay, the district court did not violate Marchbanks's right to a speedy trial under the Sixth Amendment.

### B.

Next, Marchbanks argues that insufficient evidence supported his convictions for conspiring to possess controlled substances with the intent to distribute and for possessing firearms in furtherance of drug trafficking. For both, we ask merely if, "viewing the evidence in

the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014).

A drug conspiracy has three elements: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996). Marchbanks contends that the evidence failed to establish "an agreement," but showed instead a mere "clubhouse" in which Marchbanks and his friends "gathered to smoke marijuana and to carry weapons in keeping with their chosen lifestyle." But the government does not need to prove a formal agreement between the members of a conspiracy—only a tacit understanding. *United States v. Deitz,* 577 F.3d 672, 677 (6th Cir. 2009). The understanding "may be inferred from circumstantial evidence [that] may reasonably be interpreted as participation in a common plan." *United States v. Hughes,* 505 F.3d 578, 593 (6th Cir. 2007).

Here, at least four witnesses testified that Marchbanks left drugs in his house for his friends and family to sell. The also testified that they sold the drugs and gave the proceeds back to Marchbanks, who then replenished his supply. This evidence was sufficient for the jury to find that Marchbanks reached at least a tacit understanding with his co-conspirators to sell drugs.

Marchbanks contends that insufficient evidence supported his conviction for possessing a firearm in furtherance of drug trafficking because Marchbanks "neither dealt with nor liked guns" and the evidence against him amounted to nothing more than the presence of other people's guns in his home. But when a "conspiracy is ongoing, a conspirator is liable for the acts of his co-conspirators during the relevant statute of limitations period unless he is found to have withdrawn from [the] conspiracy[.]" *Deitz*, 577 F.3d at 693.

Here, multiple witnesses testified that—while selling Marchbanks's drugs in Marchbanks's house, for Marchbanks's profit—Marchbanks's co-conspirators carried guns for protection. And one of the runners testified that Marchbanks kept a pump-action shotgun in his bedroom and owned the Ruger that Marchbanks's cousin used to avenge the attempted robbery. Sufficient evidence therefore supported this conviction as well.

C.

Marchbanks also argues that the district court erred by limiting cross-examination of the runner's grandmother, Nancie Hurst, on the subject of her grandson's criminal history. We review evidentiary rulings for an abuse of discretion. *See John B. v. Emkes*, 710 F.3d 394, 406 (6th Cir. 2013).

Hurst testified that she asked Marchbanks not to allow her grandson to hang around with Marchbanks, but that Marchbanks refused. Marchbanks's counsel sought to demonstrate that Marchbanks was not the original cause of the grandson's criminal conduct by cross-examining Hurst on her grandson's criminal history. When the government objected, the district court limited the questioning to crimes that resulted in convictions and did not involve Marchbanks. Marchbanks now contends that the full scope of the grandson's criminal activity was a proper subject of cross-examination. But the excluded criminal history had little—if any—probative value. At most, it marginally related to a tangential inference from Hurst's testimony: that Marchbanks had caused the runner's start in criminal activity, rather than only facilitating his continuing criminal activity. The district court did not abuse its discretion.

D.

Finally, Marchbanks argues that the district court erred by enhancing Marchbanks's sentence for obstructing justice. *See* U.S. Sentencing Guidelines Manual § 3C1.1. For

challenges to a sentencing enhancement, we review for clear error the district court's factual determinations and review mixed questions of law and fact de novo. *See United States v. Cole*, 359 F.3d 420, 430 (6th Cir. 2004).

Here, the government sought the enhancement because Marchbanks hid the drugs and guns before going to the hospital and later told the police his tale of real estate misadventure. Marchbanks responds that the enhancement serves only to punish him for exercising his Fifth Amendment right against self-incrimination. But the (dubious) premise of that argument—that the Constitution protected his efforts to hide the guns and drugs—is not developed. We therefore do not consider that argument. Marchbanks otherwise asserts that the enhancement was based on conduct unrelated to the investigation of the Crips' robbery. But Marchbanks's drug activity was related to the motive for the robbery, and thus his efforts to hide the drugs and misdirect the police obstructed the investigations into the robbery and his drug activity. The district court thus properly applied the two-level enhancement to Marchbanks's sentence.

\* \* \*

The district court's judgment is affirmed.